PALM and ROBERTSON, Plaintiffs in Error, *v.* THE OHIO AND MISSISSIPPI RAILROAD COMPANY, Defendant in Error.

### ERROR TO ST. CLAIR.

A. contracted to construct and deliver to B. sixteen locomotives to be paid for as delivered; the fifth locomotive delivered was not paid for: *Held,* That on this account A. could not abandon the contract and recover for loss of profits on the eleven to be delivered, and the material for them on hand, unless the payment on delivery was expressly made a condition precedent to the completion of the contract.

To enable A. to recover such damages, the non-performance by B. must be of such a nature as to absolutely prohibit A. from fulfilling his part of the contract.

THE plaintiffs in error, sued the defendant below in the St. Clair Circuit Court, March Term, 1856, in an action of assumpsit—damages, $35,000.   Declaration contains four counts.

First count sets out a special agreement by which plaintiffs in error were to construct sixteen locomotive engines, according to certain specifications, to be delivered within certain specified times, to be paid at a certain rate, in bonds and cash; it avers that the said original agreement was subsequently modified, by which the defendant promised to pay for some of said engines then in course of construction, to wit: for four of them, the sum of $9,300 each, in currency, to be completed by plaintiffs on the 31st of January, 1855.   Declaration alleges that five locomotives since the last modified agree-

ment, were delivered under it; that plaintiffs in error were engaged in building the balance of said locomotives, and had on hand for that purpose a large amount of material prepared for said engines, said material was worth $3,000. . It avers that defendant failed to perform in this—that for one of the engines delivered under the modification they did not pay at the time of delivery—that for the last one actually delivered they did not pay at all, by means whereof plaintiffs were prevented from completing their contract, lost profits and were prevented from doing other work, and have the material worth $3,000 on hand, which is perfectly useless to them, to the damage of $10,000.

Second count sets out the agreement more generally, under which, for a certain sum of money to be paid for each engine, five were to be delivered by the 31st of January, 1855 ; that four of said locomotives were delivered before the 31st of January, 1855, the last on 5th March, 1855, which said last one was received by said defendant under the said agreement; that the plaintiffs had ready various parts of machinery to construct other locomotives under said contract, and were ready and willing to proceed with putting said locomotives together, but that defendant failed in this, that they did not pay for the fourth locomotive within the time stipulated ; did not pay for fifth locomotive at all, and had become, while plaintiffs were preparing the other locomotives under the contract, wholly insolvent, by means of which plaintiffs were prevented from completing their contract, lost profits thereof, have useless material on hand, worth $3,000, to their damage of $10,000.

Third count charges that under a certain agreement set out in the first and second counts, plaintiffs constructed and delivered one certain locomotive to defendant, for which the latter was to pay $9,300 on delivery ; that defendant did not pay on delivery, but some three months thereafter, by means whereof they became liable to pay interest, viz. : $250, which they had failed to do.

Fourth count is a general count in *indebitatus assumpsit* for work and labor done, materials furnished, money lent, had and received, and paid for their use, and account stated.

First and second counts were demurred to by defendant, and demurrers sustained by court. Issues were joined on the two remaining counts, the general issue having been pleaded, with notice of a special defense, that the locomotive Swallow, which remains unpaid, was not of good workmanship, etc.

Jury found verdict for plaintiffs, $10,486.28.

Plaintiffs move for a new trial, which was overruled and judgment was rendered on the verdict.

Bill of exceptions shows that under the common counts certain vouchers were introduced, which were all certified by agents of company as correct, and so admitted on the trial, that plaintiffs claimed interest at the rate of six per cent. from the time they were so specified, but that court instructed the jury that said plaintiffs were not entitled to interest. Bill shows that under the common counts plaintiffs attempted to show that they had prepared parts of machinery to build locomotives under a contract which was in proof, but that they had not built said locomotives; and said material was on hand, because defendant had first failed to comply. Court instructed jury that plaintiffs could not recover for such material. The rulings set out in the bill were all excepted to.

The sustaining the demurrers to first and second counts of declaration, and the overruling motions for new trial are the errors assigned on the record.

G. Kœrner, for Plaintiffs in Error.

W. H. Underwood, for Defendant in Error.

Caton, J. The first question to be considered arises upon the demurrer to the two first counts in the declaration, and this involves a construction of the special agreement on which those counts are based. By the agreement, as shown by these counts, the plaintiffs agreed to construct and deliver to the defendant sixteen locomotives, for which they were to be paid by the defendant, a certain stipulated price as the locomotives were delivered. The plaintiffs aver that they completed and delivered five of the engines, and were proceeding to construct the others, for which they had provided three thousand dollars worth of material, peculiarly adapted for that purpose, but which for other purposes was nearly valueless. The plaintiffs then aver that the defendant failed to pay for one of the locomotives on delivery, and for the last one delivered, they failed to pay at all, by means whereof the plaintiffs were prevented from completing their contract, whereby they lost the profits which they otherwise would have made, and also the value of the material on hand, to their damage, of ten thousand dollars.

It will be observed that these counts do not go for the value or price of the machine delivered and not paid for, but for the damages sustained in being prevented from completing the contract, and the question is, whether the failure to pay for the articles delivered as stipulated, was such a breach of the contract, as authorized the plaintiffs to abandon it and recover what profits they might have made by completing it. I have

examined all the authorities referred to by counsel, and have made diligent search myself, but have found no case where the plaintiff has been allowed to recover for losses sustained, by not being permitted to complete the contract, unless he has been prevented from going on with his work, by the positive affirmative act of the other party, or where the other party has neglected to do some act, without which, the plaintiff could not, in the nature of things, go on with his contract, as where he refused to furnish a place whereon to erect a building, or to furnish material which, by the contract, was to be put in the works and which was to be provided by him. In such a case, the act agreed to be done is clearly a condition precedent and indispensable to enable the other party to go on. Where the act, which the defendant was bound to do, is, by the terms of the contract, made a condition precedent, to the performance by the plaintiff, either in the nature of things, or evidently in the contemplation of the parties at the time the contract was entered into, then the failure to do the act does of itself prevent the other party from performing, as much as if he were forbidden to perform it. But no where have I found a case, where the failure to pay the consideration for the work as it progresses, according to the terms of the agreement, has been held such an act or omission, on the part of the defendant, as to prevent the other party from completing the contract. It is undoubtedly true that the failure to make such payments may, in point of fact, leave the other party without the means or credit to go on and complete the job, but such is not the necessary result of such a failure, and we cannot safely adopt it as a conclusion of law, that it does prevent the party from going on. The prompt payment of such installments might be indispensable to enable a party of some means and credit to go on, while another of larger means and more extended credit might be able to complete the contract, without embarrassment or sacrifice. Can we inquire into the actual fact, and see whether the non-payment did really stop the plaintiff or not, and thus administer one measure of law to a poor man and another to the rich? A stronger may, in like manner, prevent the party from performing a contract, and even subject him to damages for non-performance, by failing to pay him money promptly when due, still he cannot be liable for the damages thus resulting, as the consequence of the failure to pay the money. The law has necessarily prescribed different consequences, and another and uniform measure of damages for a failure to pay money when due, and ordinarily it is the same whether it be due in installments as the work progresses, or when the job is completed and the whole is due. The defendant might

owe the plaintiff upon another account, to become due at a specified time, upon which the plaintiff relies for the means of completing the contract at the time he enters into it, and a failure to pay such money, would be as likely to prevent him from going on with the work, as if it were an installment due upon the work itself, and there would be as much propriety, both in reason and in law, to permit him to say that the defendant had thereby prevented him from fulfilling his contract, and call upon him to pay for what profits he would have made, had he not been thus prevented from going on with the work. When money becomes due upon the partial completion of a contract, it is difficult to say that it is any more than so much money due the party, and which ought to be paid, to enable him to complete that or some other enterprise as his interests or inclinations may dictate; and to thus distinguish it from money which may be due him upon any other account. If the money is paid when due, it cannot be distinguished from other money which the contractor may receive from the same or other parties. He may apply it in the further execution of the contract, or to other purposes, as he may choose. The party paying it, has no right to insist upon its application or expenditure in any particular way.

A contract, no doubt, may be so drawn as to make the payment of a part of the consideration by installments as the work progresses, or at stated times, independently of the progress of the work; a condition precedent to the further prosecution of the work, and make its non-payment such a substantial violation of the contract as to authorize the other party to abandon the work and sue upon it, as for having been prevented from completing it by the act of the party who had thus failed to perform such condition precedent. But the law cannot infer such a consequence from the ordinary obligation to pay money at a particular time, or upon a completion of a specified part of the work. In order to give a contract such an effect, it should contain some provision showing that it was the intention of the parties, that the non-payment of the money as stipulated, should produce such a result upon their rights. No doubt parties have a right to make such a contract, and it is the duty of courts to give effect to the intentions of the parties when that is manifest, even regardless of technical and arbitrary rules of construction, when such rule would defeat the evident intention of the parties, but such intention must be found in the expressions used in the contract, and is not to be guessed at as being probable, from the extent or magnitude of the contract, when there are no expressions in the contract evincing such intention, which would be required, to authorize such construction, were the subject matter of the contract

less important, or the amount of the payments withheld more insignificant.

In this case, we have a contract for the manufactory and delivery of sixteen engines, each to be paid for on delivery, without any expression or intimation, that the parties expected or intended that any extraordinary consequences were to follow, if the money was not paid when due. All that the contract provides is, that so much in money and so much in bonds shall become due upon the delivery of each engine. By its terms, it simply gives the party a cause of action for that amount, which may be sued for and recovered, if not paid at the time. The contract provides for no other penalty or liability, and the law imposes no other, except, perhaps, that this violation of the contract by the defendant in failing to make the payment, may justify the plaintiffs in treating the contract as rescinded, and in suing for the amount due, in an action for goods sold and delivered, or the plaintiffs were at liberty to bring an action upon the contract and recover the amount due, treating the agreement to pay, as mutual and independent, so far as the contract remained unexecuted on their part, and still go on and complete it, and at the end recover the full amount due on the contract, and thus realize the profits which they now allege they have lost, by not completing it. This they were at liberty to do. The defendant did not refuse to receive any more locomotives under the contract, or forbid the plaintiffs to go on and complete it, or in any way put it out of their power to fulfill it, as was done in every case referred to by counsel, or which I have been able to find. Upon these two first counts the plaintiffs do not claim to recover the amount due, for the locomotives delivered, but only for the value of materials on hand and the loss of profits. The amount due was recovered under other counts.

We think the court properly sustained the demurrer, and its judgment must be affirmed.

*Judgment affirmed.*