# The Chicago & Northwestern Railway Company

*v.*

# James McCahill.

1. Negligence in railroads — *fire occasioned by sparks from an engine — burden of proof.* In an action against a railroad company to recover for property destroyed by fire emitted from a locomotive of the company, through the alleged negligence of their servants or of the company, under the act of 1869 on that subject, the mere proof of the fact that the fire was caused by sparks from the engine constitutes *prima facie* evidence of negligence on the part of the company, and the burden of proof rests upon them to rebut the *prima facie* case of negligence so made.

2. Same — *as to proof of negligence.* In such a case, proof of the fact that the engine threw out an unusual quantity of fire was held sufficient to overcome any direct evidence given that it was in good order, or, if in good order, that it was skillfully managed by the engineer.

3. Evidence — *refreshing witnesses' recollection.* In an action against a railroad company to recover for loss of property destroyed by fire, resulting from negligence of the company, it was held proper to permit the plaintiff, in giving his testimony, to refresh his recollection from a memorandum he had made of the articles destroyed by the fire.

4. Same — *res gestæ.* In such case, it is not improper to allow witnesses to testify to the loss of articles not included in the declaration, as being part of the *res gestæ;* though the court would doubtless instruct the jury if requested to do so, not to allow for any articles not embraced in the declaration.

5. Rules of Practice — *in what mode they may be questioned.* In order to test the validity of a rule of practice in the court below, which provided that instructions would not be considered by the court unless presented before the commencement of the final argument to the jury, the party objecting to the rule should present his instructions, in writing, to the court, after the time limited by the rule, and if the court should then refuse to consider them, they should be embodied in a bill of exceptions, and then the ruling of the court would be subject to review.

Appeal from the Circuit Court of Kane county; the Hon. Silvanus Wilcox, Judge, presiding.

The opinion states the case.

Mr. A. M. Herrington, for the appellants.

Messrs. Blanchard & Silver and Messrs. Joslyn & Slavin, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

This was an action on the case, brought in the circuit court of Kane county by the appellee, to recover for the loss of a barn and contents, alleged to have been destroyed by fire communicated from the engine of appellants running on their road through the village of Woodstock. ·

It is averred in the declaration that at the time the fire oc·curred the engine of the appellants was not provided with the best and most usual mechanical contrivances to prevent the improvident escape of fire sparks, and, by reason of the neglect in that regard, the appellants were guilty of culpable negligence in running the engine on their road in its then condition.

The evidence preserved in the record is of such a character that it leaves no serious doubt on the mind that the fire, which destroyed the property of the appellee on the 15th day of April, 1869, was occasioned by fire sparks emitted from the locomotive engine passing at the time, and fully justifies the finding of the jury on that issue.    A number of witnesses, on whose testimony the jury must have relied, state that, at the time the engine passed the premises of the appellee, it was emitting an unusual volume of fire sparks and that some of them were carried a great distance from the track.´ The distinct marks left by the fire emitted from the engine were to be seen in many places near the premises of the appellee.    The property destroyed stood some sixty feet from the track and not far distant from the depot.    While the witnesses do not agree as to the exact hour that the engine passed the premises on the day of the fire, they do, substantially, all agree that the fire occurred soon after the train passed.    After a careful consideration of all the evidence, we can reach no other conclusion than that arrived at by the jury, that the fire that caused the destruction of the property in question was occasioned from

fire sparks emitted from the engine of appellants while in use on their road. No other explanation of the origin of the fire is or can be given consistently with the evidence. The fire that occasioned the damage complained of occurred after the passage of the act of 1869. (Gross' Comp., p. 554). And by the provisions of that act, the fact that the fire was occasioned from the engine, is made full *prima facie* evidence of negligence on the part of the company, and of its agents and servants in charge at the time. This primary fact in the case being once established by the evidence, the burden of proving that the engine was in good order at the time, and provided with all the best and most usual mechanical contrivances to prevent the escape of fire sparks, rested on the company. Under the provisions of that act it is the duty of the company to rebut, by affirmative evidence, the *prima facie* case made by proof of the single fact that the fire which caused the injury complained of was occasioned by the engine. The use of steam as a propelling power on the lines of railroad is known to be dangerous to property in the vicinity, even by the most careful use. Notwithstanding the known danger, the legislature has seen fit to invest railway companies with the right to use that kind of power in the exercise of their franchises, yet upon this condition, that such corporations will use all possible precautions by the use of the most approved mechanical contrivances for that purpose, to prevent danger to the property of the citizen along the lines of their roads through the escape of fire from their engines. The reckless use of this power would introduce into our towns and cities and farming communities along the lines of these roads a most dangerous element of destruction, and that fact itself imposes upon the company a high degree of care and skill in the use of the engine and in the application of the best and most effective means to prevent the escape of fire. The law has wisely imposed this duty on all railroad companies, otherwise there would be no security whatever for property on the lines of these great thoroughfares that now traverse the country in every direction. The degree

of care required is always in proportion to the danger, and the greater the danger the higher will be the degree of care required. The rule is a reasonable one. The companies have these engines under their control, and the opportunity of frequent and constant examination. The citizen, whose property is exposed to danger, has no such opportunity, and must rely on the care and vigilance of the companies. In the absence of such degree of care and diligence to prevent injury to property, the courts have always held railway companies to a strict accountability for any loss that may occur. *Ill. Cent. R. R.* v. *Mills*, 47 Ill. 407.

The material questions that arise upon this record and present themselves for consideration are, whether the evidence shows that the company used that degree of care and diligence that the law requires, in the application of mechanical contrivances to prevent the emission of fire sparks from their engine, and whether the engine was in good repair, and whether it was skillfully handled by a prudent and competent engineer.

We learn from the evidence that the engine "Jupiter," that was used by the company on the day the fire occurred, had lately been in the shop for repair, and that a new wire netting was then put in, of the ordinary size, strength and quality. A number of the witnesses testify that the engine was in good repair. It does not appear that any repairs were made on it when it was in the shop, except to put in the new wire netting. If any particular examination was made of the condition of the engine, the witnesses do not state the minutiæ of that examination. We understand that the main contrivance relied on to arrest fire sparks is an inverted iron cone, called, perhaps, a spark deflector, so adjusted that it receives and checks the fire before it reaches the wire netting in the smoke-stack. When the exhaust is very great, the fire is driven out with tremendous force, and one purpose of this cone is to check the great force of the fire sparks, and to prevent them from striking the wire netting with such force as to destroy it. Without this cone, or some other such contrivance, the wire netting

would be practically of very little use. The condition of the spark arrester, in this instance, is not stated by any of the witnesses. If it was out of order, perhaps no wire netting, of the size used in making the repairs, that was ever wrought could have withstood the force of the fire thrown from a coal-burning engine, for a day or for any considerable length of time. In opposition to all the evidence offered by the company, there is the unimpeached testimony of witnesses that the engine, as it passed through the village on the day the fire occurred, threw out unusual quantities of fire, and that it did actually occasion the fire that consumed the property of appellee. Intelligent witnesses, and men of large experience, sworn on behalf of the company, concede the fact, that if it be true that the engine did emit such an unusual volume of fire as stated by the witnesses, it must necessarily have been out of repair at the time. Whether this engine was ever equipped with the best mechanical contrivances to prevent the emission of fire sparks does not very clearly appear; but, if it be admitted that it was originally so constructed, the actual results of what the engine did, in throwing out and emitting fire sparks as it passed along through the village on the day the fire occurred, are sufficient to overcome any direct evidence appearing in this record that it was in good order; or, if in good order, it must have been most unskillfully managed by the engineer.

We are of opinion that the verdict is not against the weight of the evidence, and the jury were fully authorized to find as they did.

It is insisted that the court erred in permitting the appellee to read from a memorandum used by him in giving his evidence.

It appears from the record that the appellee had made a memorandum of the things destroyed by the fire, and had the same in his hand at the time he was testifying, and used it for the purpose of refreshing his recollection. The record states that the court allowed the witness to refresh his recollection from the paper. We see no error in the ruling of the court on that question.

It is further objected that the witness also testified to some small things that were destroyed by the fire that were not included in the declaration.   It was a part of the *res gestæ*, and there was no error in the court permitting the witness to testify to all that transpired.   If the jury only allowed for the articles described in the declaration, at the prices fixed by the witnesses, the evidence would fully sustain the verdict, and we may therefore presume that the jury did not allow for any articles not included in the declaration.   Doubtless the court would have instructed the jury not to allow for any articles not embraced in the declaration, if it had been asked so to do.

In support of the motion for a new trial, the counsel for appellants filed an affidavit, in which he alleges that the interests of his clients were greatly prejudiced by a rule adopted by the circuit court, in which the cause was tried.   The rule to which reference is made, required that all instructions should be presented to the court before the commencement of the final argument to the jury, or they would not be examined by the court.   We apprehend that the counsel has not pursued the proper course to test the validity of that rule of court.   If the counsel desired any further instructions to be given to the jury, he should have presented the same to the court, in writing, and if the court had then refused to examine and mark the same " given " or " refused," as the statute requires, he should have embodied the same in a bill of exceptions, and the ruling of the court would have been subject to review by this court. This was not done, and we cannot consider the question in the manner it is now presented.

We are unable to discover any substantial error in the court in giving and refusing instructions at the trial.   Those given in behalf of the appellee embody, in substance, the principles announced in this opinion, and were sufficiently accurate in the statement of the law.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*