FOREST GLEN BRICK & TILE COMPANY
v.
CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*Railroads—Fires—Sparks—Latest and Most Approved Appliances— Use of Locomotive Stacks—Evidence—Instructions.*

1. A railroad company may not, because of the exigencies of its business, inflict avoidable loss upon the owners of adjacent property. Such company must use every possible precaution by adopting all the best and most approved mechanical inventions, to prevent loss by fire along the line of its road.

2. An instruction which leaves it to the jury to find that a railroad company performed its duty by using means to prevent the escape of sparks not so good as the best and most approved, is erroneous.

[Opinion filed October 28, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Mr. ADELBERT HAMILTON, for appellant.

1. All the evidence in this case tends to show that this engine, 554, set this fire; the wind, the weather, the proximity of engine and yard, the close, circumstantial connection in point of time between the engine going by and the starting of the fire—all these facts make it an irresistible conclusion that engine 554 destroyed the property of this plaintiff.

2. Was it an unexcused act of negligence? Under the statute of Illinois relating to railway fires, the fact that the fire was communicated by the engine "shall be taken as full *prima facie* evidence, to charge with negligence the corporation * * * in the use and occupation of such railroad." 2 Starr & C. Ill. Stats. 1949, p. 104.

There was an improved spark arrester, known by the company. If it had been put on engine 554—the engine that was a "spark thrower," a "bad engine"—it would not have thrown sparks and set our property on fire.

What now was the diligence of the company defendant in adopting this appliance for fire prevention? This is an important question, because Judge Conger, one of the Justices of the Appellate Court in the Third District, speaking for that court in regard to the duty of railway companies to provide adequate spark arresters, said: "We think the true rule is that it is the duty of railroads to use every possible precaution to prevent loss to others by escape of fire from their engines, by the highest degree of diligence in ascertaining and adopting the best or the most approved mechanical inventions and appliances to prevent the escape of fire." C. & A. R. R. v. Hunt, 24 Ill. App. 644, 647.

For more than two years, until, in fact, August, 1886, the company never moved toward adopting this improvement on their freight engines. It was absolutely inactive; and when, in August, 1886, the order did come to put the extension arch upon freight engines, it was to be done only when the engines came in for "general repairs," that is, when they were worn out or wrecked.

The court erred in giving to the jury defendant's instructions 2 and 3, wherein the criterion of reasonable care is made the use by defendant of a spark arrester, generally used and adopted.

In one railway fire case the court says: "The sole question is, whether defendants did their duty, by using known agencies in general use, in order to prevent such accidents. It is undoubtedly their duty to use great care, and to adopt the best precautions which are in general use, to avoid such

danger.  If defendants used ordinary care and skill in procuring such spark arresters as are generally in use in the country, and are approved by experienced railroad operators, and were not guilty of any negligence in that respect, then they are not liable for the plaintiff's loss, if they caused it. If, on the contrary the accident was due to their negligence in not providing their engines with those means in common use, then they are responsible if the accident was the result of that."   Gowen v. Glaser, 10 Att. (Pa.) 417.

In another case the following instruction was given and approved:  "It is negligence to use cars dangerous in their construction, when there are others to be secured which are not dangerous; and railroad companies are bound to procure the best, otherwise they must be held responsible."

" We can not hold this instruction as incorrect," said the court.   St. L. & S. E. Ry. Co. v. Valerius, 56 Ind. 519.

It is a question for the jury to decide, says the New York court, whether, upon the evidence, a railroad company is guilty of negligence in not ascertaining the utility of, and adopting, an improvement to protect passengers from injuries by accidents to which the cars are liable.   Hegeman v. The Western R. R., 13 N. Y. 9.

In another New York case the railway company had tested and partially adopted a new form of switch, but neglected to adopt it at a point where it might have prevented an accident, had it been used.

"It has been held, " said the court, "that railroad companies are bound to avail themselves of all new inventions and improvements known to them, which will contribute materially to the safety of their passengers, whenever the utility of such improvement has been thoroughly tested and demonstrated.   Undoubtedly this rule is to be applied with a reasonable regard to the ability of the company and the nature and cost of such improvement; but within its appropriate limits it is a rule of great importance, and one which should be strictly enforced.   A stronger case for the application of the rule than is here presented could scarcely arise.   The improvement related to a part of the apparatus of the road,

which is the source of numerous accidents. Its utility was undoubted and the expense trifling. The defendants had themselves recognized its value. If the principle should ever be applied, therefore, it should be applied here. The defendants were clearly in default in permitting the short switch to remain in use upon the road, especially at a place where there was a somewhat unusual complication of switches. The judge was fully warranted, therefore, in submitting this question of negligence to the jury, even if he would not have been authorized to assume, as matter of law, that the company had neglected their duty in this respect." Smith v. N. Y. & H. R. R. Co., 19 N. Y. 133.

Similarly, the question of negligence by defendant in the case at bar, in not having put the extension arch and straight stack upon its freight engines, and particularly upon No. 554, should have been brought squarely before the jury. As a matter of fact defendant's instructions ignored it wholly.

"It is incumbent, therefore, on the companies, to use the greatest precaution, so as to secure the engines against emitting sparks." Bass v. C., B. & Q. R. R. Co., 28 Ill. 18. (1862.)

"As this court has already had occasion to remark, it is not requiring too much of railway companies, which are sending over the country so dangerous an element as fire, that they should use all the appliances of science, and the highest degree of diligence to prevent the destruction of the immense amount of property contiguous to their lines." St. Louis, etc., R. Co. v. Gilham, 39 Ill. 457. (1866.)

Per Mr. Justice Breese: "Nor can I think the care and diligence a prudent man would use about his own property is of the same grade as that required of railroad companies. For the safety of the people and their property a degree much higher ought to be required. The care and diligence required in every case should have some relation or affinity to the nature of the business and of the instrumentalities by which it is conducted. The opinion of the majority of the court shows this." Ill. Cent. R. R. Co. v. Mills, 42 Ill. 412. (1866.)

But see O. & M. R. R. Co. v. Shanefelt, 47 Ill. 500, where the degree of diligence required of a corporation and individual

are declared to be equal as to clearing combustibles from right of way and from adjacent property.

"These bodies (railway corporations) should be held to the exercise of due diligence in operating their machinery. They should be required to provide and keep constantly in use and in proper repair the most approved machinery to prevent fire from spreading from their engines," etc. T. P. & W. R. Co. v. Pindar, 53 Ill. 450. (1870.)

At this date the court indicate that it is the duty of a railway company to "use all proper and reasonable precaution to prevent the escape of fire from their engines, by the application of the best and most approved mechanical appliances for that purpose." They say, moreover, that in order to meet a *prima facie* case of negligence the defendant company must "show by affirmative evidence that the engine at the time was equipped with the necessary and most effective appliances to prevent the escape of fire." C. & A. R. R. Co. v. Quaintance, 58 Ill. 392, 393. (1871.)

This year the court say : "The law holds them (railway companies) to the exercise of a very high degree of care and skill in the use of the most effective appliances to prevent the emission of fire sparks from their engines," and "when they have exercised the highest degree of care and skill in this regard, if loss occurs it must fall on the owner." T. W. & W. R. Co. v. Larmon, 67 Ill. 71. (1873.)

"The law doubtless required defendant to use every possible precaution, by the use of all the best and most approved mechanical inventions, to prevent the loss by fire along its road." C. & A. R. R. Co. v. Pennell, 94 Ill. 488. (1880.)

"We think the true rule is that it is the duty of railroads to use every possible precaution to prevent loss to others by escape of fire or sparks of fire from their engines by the highest degree of diligence in ascertaining and adopting the best or the most approved inventions and appliances to prevent the escape of fire." Appellate Court in Hunt v. R. R. Co., 24 Ill. App. 647. (1886.)

Messrs. WALKER & EDDY, for appellee.

Instructions 2 and 3 given on behalf of the defendant in the

court below, complained of in appellant's brief, it is submitted, contain a fair and correct statement of the law applicable to the case.    They should be read in connection with the instruction given on behalf of the plaintiff, in which the jury are instructed that in order to rebut the *prima facie* case of negligence established by the defendant, the defendant must show that it, the defendant, "up to and at the time of said fire had used a reasonable degree of diligence in ascertaining and adopting the best and most approved mechanical inventions and appliances upon its said locomotives for preventing the escape of said sparks, cinders or fire, and if the jury believe from the evidence that the defendant has not used due diligence in this respect, and that by reason of its failure so to do," etc., verdict must be for the plaintiff.

The words complained of in the second instruction, that the defendant in the construction of its engines "must use good and sufficient netting or spark arresters, such as are most in use or such as have been approved by experienced railroad operators and mechanics, at or before the time of its fire," etc., are strictly in accordance with the law as laid down in C. & A. R. R. v. Hunt, 24 Ill. App. 644; T., W. & W. R. R. Co. v. Corn et al., 71 Ill. 493.

Certainly no higher degree of diligence could be required of a railroad company than that stated in the third instruction given on behalf of the defendant company in the court below, and which is also complained of by appellant, wherein the jury is instructed that in order to relieve the defendant they must find that the defendant's engines "were equipped with proper appliances to prevent the escape of fire, such as suitable and proper netting, combs, ash-pans and dampers, and that in the construction of the smoke-stacks of the defendant's locomotives the netting or spark arresters and other appliances to prevent the escape of fire were of the kind and character that had been generally used upon railroads upon coal-burning engines, and were extensively used at the time of the burning, and that in the construction, use and operation of its locomotives the defendant had exercised *reasonable and proper care and diligence*" (exactly the language approved

by the court in C. & A. R. R. Co. v. Quaintance, 58 Ill. 392),
then the court," etc.   The opinion of the Appellate Court
above cited, distinctly says that a railroad is relieved by adopt-
ing the best or most approved mechanical invention and appli-
ance to prevent the escape of fire.   That is to say, it might
adopt the newest and latest invention, though in doing so the
burden of proof would be thrown upon it to show not only
that it was the latest and newest invention for preventing the
escape of fire, but also that it was better than the appliances
most generally in use, or the company may use the most
approved appliances, *i. e.*, those appliances most generally in
use on railroads, and be relieved from all liability.   It is not
contended in this case that the defendant was at all negligent
in discovering the merits of the straight stack, but it is con-
tended that defendant did not use due diligence in making the
change.   But that contention is mere argument on the part of
the appellant, as there is not a scintilla of evidence in the
record to show that the defendant could have changed its
795 engines in less time than it did make the change; on the
contrary, the record on this point shows that the change was
made as rapidly as it could be made consistent with defend-
ant's duties as a public carrier.

There is nothing, either in the direct testimony or in the
cross-examination of defendant's witnesses, to show that under
any circumstances the change could have been more quickly
made.   Of what effect, therefore, would it have been to have
made the instructions stronger as to the diligence required in
making the change?


GARY, P. J.   Very soon after midnight on the morning of
April 23, 1887, a house, barns, sheds, etc., of the appellants,
situated upon their premises adjoining the railroad of the
appellees, were burned, and appellants allege, by fire kindled
by the sparks thrown from a locomotive of appellees.

Many trains of the appellees passed the premises of the
appellants during the night, but the appellants fix upon loco-
motive No. 554, passing their premises at 12:02, going north,
as the mischief maker.   Whether they are right in that position

is a question for a jury. On coal-burning locomotives the case shows there are two kinds of stacks in use. The earlier kind is known by the name of diamond stack. The later, and as it is claimed by appellants, the safer kind for adjacent property, is the straight stack with front extension.

There was evidence in the case from which the appellants were warranted in insisting that No. 554, which carried the diamond stack, threw sparks that caused the fire, and that from such stacks more sparks were thrown than from straight stacks. The size of the sparks that may be thrown by either depends upon the size of the mesh of the netting used, but the straight stacks deposit much of the sparks that would escape from the diamond, in a pocket under the stack, from which they are removed when a large quantity has accumulated.

The appellees began in 1884 to change the stacks on their locomotives from diamond to straight, and from the evidence the appellants were warranted in insisting that one of the reasons on the part of appellees for such change was the greater safety of the straight as to throwing sparks. But in 1884 the appellees had more than 500 locomotives; to change the stacks of all was a work of great labor, requiring a good deal of time; and they had an immense traffic, needing the services of the locomotives, which, without the constant use of nearly all of them, would be seriously interrupted, to the great inconvenience of the public, as well as the appellants. The real question in the case is, whose is the risk as to the difference in the degree of danger between the diamond and the straight, when one of the former class, in good order and properly managed, is used ? Is it run at the risk of the company, or of the adjacent property owner ?

At the instance of the appellees the court gave, among others, the following instructions:

" First. The court instructs the jury that the plaintiff charges in its declaration in this action, that the defendant was operating and using a certain railroad, extending along and adjacent to the property of the plaintiff, and that while a certain locomotive engine of the defendant, and under its control,

was passing said property of the plaintiff, divers sparks and brands of fire then and there escaped, and were thrown, by and through the carelessness and negligence of the defendant, upon the property of the plaintiff, and that by reason thereof said property was wholly burned and destroyed. The defendant for answer to said declaration denies that it was guilty of carelessness or negligence, and denies that said property was burned or lost to the plaintiff through the negligence or carelessness of the defendant.

And the court instructs the jury, that under the issues in this case the plaintiff must sustain its claim that the fire in question was communicated by an engine of defendant, by a preponderance of the evidence. And you must also, under the evidence and instructions of the court, find that the defendant was guilty of carelessness or negligence in the construction or management of said engine, as defined in their instructions, or else you should find the defendant not guilty.

Second. The court further instructs the jury that the law requires of the defendant in the construction of its engines to exercise reasonable care to prevent the escape of sparks and fire, both from the smoke stack and ash pan of the engine, and for that purpose to use good and safe netting or spark arresters, such as are either most in use, or such as have been approved by experienced railroad operators and mechanics, at and before the time of said fire, and also that such spark arresters must be good and safe, and such as are approved by experience. And if the jury believe from the evidence that at the time of the alleged fire the defendant was using upon its road, passing near the plaintiff's property, engines equipped with spark arresters that had been adopted and generally used by railroad companies, and such as have been shown by experience to be reasonably safe, for the purpose of preventing injuries by fire to the plaintiff's property, and at the same time of such burning, or immediately preceding the same, all the engines of the defendant, charged with emitting fire, were properly equipped with proper spark arresters, and in good order, and were handled and operated in a prudent manner, so far as the same could be handled, for the prevention of

the escape of fire, then the court charges the jury that the defendant has discharged its duty to the plaintiff, as required by law, and is not liable for the damages sustained by said plaintiff.

Third. The court further instructs the jury, that if you believe from the evidence that the locomotive engines of the defendant, run upon its road along and in close proximity to the plaintiff's property, were coal-burning engines, and were equipped with proper appliances to prevent the escape of fire, such as suitable and proper netting, cones, ash pans and dampers, and that in the construction of the smoke stacks of the defendant's locomotives the netting, or spark arresters, and other appliances to prevent the escape of fire, were of the kind or character that had been generally used upon railroads, upon coal-burning locomotives, and were extensively used at the time of the burning, and that in the construction, use and operation of said locomotives the defendant had exercised reasonable and proper care and diligence, then the court instructs you that the defendant would not be liable for the burning of the plaintiff's property, but that under the law such burning would be attributable to accident, for which there can be no recovery."

To these instructions the appellants excepted.

An instruction must be construed with reference to the facts in evidence before the jury. Chi. W. D. Ry. v. Mills, 105 Ill. 63.

It was proved conclusively by witnesses for both parties, that the construction of the straight stack was such that it caught and retained in the pocket a very large portion of the sparks that would escape or be thrown out from the diamond; indeed, from some of the testimony it might be argued that the difference would be as much as two bushels in every five miles of run.

If the jury had found for the appellees on the question of fact whether the fire was caused by a locomotive of the appellees, their verdict would probably have been conclusive; but although that question is left to the jury by these instructions it is quite probable that their verdict was based upon their

view of the compliance by the appellees with the law as to their duty laid down in the second and third instructions. With the evidence before them as to the superiority of the straight stack, they could not have found that the appellees had discharged their duty "to exercise reasonable care to prevent the escape of sparks and fire," "and that in the construction, use and operation of said locomotives the defendant had exercised reasonable and proper care and diligence" except upon the theory that the special circumstances affecting the appellees, the great number of their locomotives, the time and expense required to change all stacks, and the inconvenience by the interruption of business while making such change, excused the appellees in not having upon their locomotives the safest stack.

This theory makes the law for one railroad one thing, and for another, another. The law is not so flexible. It has one measure for all litigants.    Palm v. O. & M. R. R., 18 Ill. 217.

Whatever the mileage of a road, the number of its locomotives, or the magnitude of its traffic, if it burns up the property of an adjacent proprietor by sparks escaping from the stack of one of those locomotives, the road must show, as part of its justification or excuse, that it did "use every possible precaution, by the use of all the best and most approved mechanical inventions, to prevent loss from fire along the line of its road."    C. & A. R. R. v. Pennell, 94 Ill. 448; T., W. & W. Ry. v. Corn, 71 Ill. 493, and many earlier cases.

This rule would be, in a case presenting that feature, qualified, no doubt, as stated in C. & A. R. R. v. Hunt, 24 Ill. App. 644.    If it were shown that the means adopted in the particular case to prevent the escape of sparks, were used only by one road, but that in fact they were more effectual than those "most approved," it would be absurd to say that the road was negligent in using them.    But it being shown that neither the best nor most approved were used, the loser of the burned property is not to be turned away by any excuse for the omission.    If the road exposes the adjacent proprietor to peril from fire, which it might have avoided, it makes that peril its own.

It may not, because of the exigencies of its own business, inflict avoidable loss upon the owners of adjacent property. These instructions were erroneous in that they leave to the jury to find that the appellees had performed their duty by using means to prevent the escape of sparks not so good as the " best and (or) most approved."

If locomotive No. 554 set the fire, the appellees show no excuse.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*