## Louisville, Evansville & St. Louis Consolidated Railroad Company v. Edward S. Black.

1.  RAILROAD COMPANIES—*Damage by Fire.*—Proof of the fact of setting the fire, though outside of the right of way, makes a *prima facie* case against a railroad company, under the law. The theory is that railroad companies, if they properly equip and operate their locomotives, will not destroy the property of adjacent land owners by fire.

2.  SAME—*Must Use Their Property so ,as Not to Injure Others.*—The maxim *Sic utere tuo ut alienum non laedas* applies to the use of semi-public property as well as private property.

3.  SAME—*Injuries by Fire.*—In an action against a defendant for injuries from fires, in considering whether the defendant is liable, the question in general is, not whether the defendant has acted with due care and caution, but whether his acts have occasioned the damage.

4.  SAME—*Duty in Management of Engines—Fire.*—It is incumbent on a railroad company to use the greatest precaution in preventing engines from emitting sparks. If they send an element abroad, so destructive in its nature as fire, they must be responsible for the mischief it produces.

**Memorandum.**—Action for damages by fire. Appeal from the Circuit Court of Wayne County; the Hon. SILAS Z. LANDES, Judge, presiding. Heard in this court at the February term, 1894, and affirmed. Opinion filed June 23, 1894.

The opinion states the case.

CREIGHTON & KRAMER, attorneys for appellant.

HANNA & HANNA, attorneys for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

Damages were recovered by appellee for the destruction of property by fire thrown from appellant's locomotive. The train men saw the fire so communicated and called to one near to extinguish it, which he tried to do, and failed. That appellee's property was destroyed by appellant is conceded. The engine threw fire over the fence and outside the right of way. The same engine had shortly before set several fires in the same neighborhood, but first on the right of way, and, as shown by the section boss, the appellant's witness, had been reported, before this fire, to the company, for so throwing fire; he testified: " I reported it had been throwing out fire on my section." This was brought out on cross-examination, to which there was no objection.

Proof of the fact of setting the fire, though outside of the right of way, made a *prima facie* case for appellee, under the law. The statute so provides. The theory is that railroad companies, if they properly equip and operate their locomotives, will not destroy the property of adjoining land owners by fire. For this reason, in condemnation proceedings, the law does not allow an owner any consequential damages for a probable loss by fire.

The State of Illinois is traversed in all directions by about 10,500 miles of railroad, passing over, probably, as large a body of as fertile land as there is in the world. Those lands are now mostly in a high state of cultivation. The farms that adjoin these lines of railroad compose a very considerable portion of the territory of the State, so that vast interests of a great number of people are involved in this question. Much of the land is so valuable and fruitful that crops are cultivated right up to the line of the right of way, which, when matured and dry, are combustible, of which fact those operating the railroads are aware. The owners have a legal right to do so: Act 1869, Chap. 114; and the corresponding right of their protection from destruction by another in the use of his property. The maxim, *Sic utere tuo, ut alienum non laedas*, applies to the use of semi-public property as well as private property.

Accordingly, in considering whether a defendant is liable to a plaintiff for damages which the latter may have sustained, the question in general is, not whether the defendant has acted with due care and caution, but whether his acts have occasioned the damage; and this doctrine is founded on good sense. For when one person, in managing his own affairs, causes, however innocently, damage to another, it is obviously only just that he should be the party to suffer. He is bound to enjoy his own property in such a manner as not to injure that of another person. Broom's Legal Maxims, p. 365–7. This maxim is but the expression of an innate sense of right and justice that meets the approval of every fair-minded man. This statutory and fundamental principle of law has, however, been somewhat modified. The general doctrine on this question was first announced in this State in Bass v. C., B. & Q. R. R. Co., 28 Ill. 9. It is there said by Mr. Justice Breese, p. 17: "There seems to us great good sense in the remarks of Tindall, Ch. J. He said: 'The defendants are a company intrusted by the legislature with an agent of an extremely dangerous and unruly character, for their own private and particular advantage, and the law requires of them that they shall, in the exercise of the rights and powers conferred upon them, adopt such precautions as may reasonably prevent damage to the property of third persons, through or near which their railroad passes.' We think there is great justice in the English rule and are inclined to adopt it as the most conducive to the safety of property (p. 18). It is incumbent, therefore, on the companies, to use the greatest precaution so as to secure the engines against emitting sparks. If they send an element abroad in a cultivated country, so destructive and devastating in its nature as fire, they ought to be responsible for the mischief it produces." There is no hardship in this. It will be observed how closely the court follows the maxim of law referred to. This English rule has been rigidly adhered to in this State. C. & N. W. Ry. Co. v. McCahill, 56 Ill. 28. The authorities are reviewed in Forest Glen B. & T. Co. v. C., M. & St. P. Ry. Co., 33 Ill. App. 565, where it is said a rail-

road company may not, because of the exigencies of its business, inflict avoidable loss upon the owners of adjacent property. The act of 1869 declares " the fact that such fire was so communicated shall be taken as full *prima facie* evidence, to charge with negligence the corporation," which is but declaratory of the common law, as in effect above announced. This much has been said, because counsel seem to ignore the rights in the lawful occupancy and use of lands adjoining the railroad, and seem to think that the jury which allowed damages in this case were actuated by prejudice, notwithstanding the uncontradicted evidence heretofore stated, which is thought to be sufficient of itself to sustain the judgment.

In addition to this evidence, the contention of appellant was that the spark that set the fire was thrown about sixty-five feet, and there was evidence tending to so show. An engineer of eighteen years' experience testified that an engine properly equipped and operated would not throw a spark that distance that would set fire. Practical engineers have testified that such an engine will not throw sparks that will ignite, fifty feet. Wabash R. R. Co. v. Smith, 42 Ill. App. 531. It is competent to show they will not throw sparks one hundred feet. I. C. R. R. Co. v. McClelland, 42 Ill. 355; see also L. E. & W. R. R. Co. v. Helverick, 29 Ill. App. 270.

Juries and judges have a right to draw inferences from such actual facts, notwithstanding evidence as to the character of the appliance and examinations thereof made, and it is very natural that they should do so. It is well known that many locomotives are operated without setting fire, while occasionally one will, as in this case, set fire frequently. Those testifying as to the condition of the spark apparatus may have honestly believed it was in good order, while there may have been some unperceived defect, because of the difficulty of its discovery. However that may be in this case, the law, as well as the natural sense of justice, demands that one man's property shall not be sacrificed and destroyed because of the exigencies of the business of

another, without just compensation, if it can be avoided. The vast interest of the agriculturist, as well as of the railroad companies, require this, for properly considered, the prosperity of each materially contributes to the welfare of both. That it can be, in the proper operation of railroads, is constantly demonstrated by the fact that locomotives, properly equipped and handled, do not destroy property by fire.

There is another strikingly impressive illustration that has come within the observation of nearly every one, of the ability, in these days of advanced science and ingenious devices, to so equip an engine that it will not emit live or dangerous sparks. It is well known that for several years past the millions of bushels of wheat, oats and other small grain, raised all over this great and productive country, are separated from the straw to be garnered, with power supplied by steam engines, which are placed and operated, in many instances, within a very short distance of the most combustible of material, and a guaranty given against accidents or loss by fire.

The inquiry is pertinent, is there any reason why railroad companies can not as safely equip and properly operate their engines? As a rule it may be they do, for generally their locomotives do not set fires; but, probably owing to defective construction, careless inspection or improper operation, occasionally one emits dangerous sparks that cause the destruction of property of adjoining land owners, an orchard in this case, the product of many years of care and toil.

It is no answer to say that with the best managed railroads such negligence will occur. In the theory of the law the entity and management accompanies every act of the servants of the corporation, performed in the line of duty. While individual interests must to a certain extent yield to the larger public interests, that doctrine has not been carried so far as to permit, in the interest of the public, any concern, however great, to so use its property as to destroy private property if it can be avoided, without just

compensation. It "shall not be taken or damaged for public use without just compensation," is the language of our constitution. The individual acquires property under the encouragement and protection of this fundamental law, which should also shield him in its enjoyment. The right of private property is sacred and dearly prized. The ordinary person is not of that philanthropical spirit and philosophical temperament to submit with complacency to the destruction of his property by fire, by another, pursuing a business for its "own private and particular advantage," without recompense, under the pretense that it is for the public good.

No point is made in this case as to the extent of the damages sustained, or as to the amount allowed by the jury. No question of law is raised in the argument of appellant's counsel, the claim being that the evidence does not sustain the verdict. Our conclusion is that it does, that the judgment is just, and therefore it is affirmed.