## McDOEL, RECEIVER, ETC., v. GILL.

[No. 2,810. Filed May 16, 1899. Rehearing denied Oct. 12, 1899.]

NEGLIGENCE.—*Railroads.*—*Fires from Engines.*—The negligent use of proper machinery may be made the basis of an action against a railroad company for damages for burning property adjacent to the railroad. *p. 96.*

VERDICT.—*Answers to Interrogatories.*—*Conflict.*—*Railroads.*—*Fires.* —Answers to interrogatories, in an action against a railroad company for damages for burning property, showing that the engine was provided with a good spark-arrester, but that the engine was improperly operated by running at too great a speed in so short a distance after starting, are not in conflict with a general verdict for plaintiff. *pp. 96-98.*

EVIDENCE.—*Railroads.*—*Fires.*—Evidence that sparks of fire and live cinders were thrown upon the roof of a building by a passing engine a short time before the fire was discovered, that there were no indications of fire before the engine passed, and that within a few minutes after the engine passed fire was discovered in that part of the building where the sparks were seen to fall, furnishes a sufficient basis from which the jury could infer that the fire originated from such sparks and cinders. *pp. 98, 99.*

From the Parke Circuit Court. *Affirmed.*

*E. C. Field, W. S. Kinnan,* and *Puett & McFaddin,* for appellant.

*D. C. Storer* and *George Harney,* for appellee.

ROBINSON, J.—Appellee recovered a judgment for the loss of property by fire averred to have been caused by appellant's negligence. The errors discussed are overruling appellant's motion for judgment on special answers, notwithstanding the general verdict, and the motion for a new trial.

The special answers to interrogatories show that the fire was set by appellant's locomotive engine; that the engine was provided with a spark-arrester known as an extension front, and was in good repair and was the best known, or equal to the best, for the prevention of escape of fire; that in passing appellee's property, the engine was not properly operated by

a skilled engineer; that it was improperly operated by running at too great a speed in so short a distance after starting; was hauling a through passenger and mail train and was running twenty-five miles an hour; that the fire started on the roof of the building; that there were a number of other frame buildings along the railroad track and within two squares north and south of the property that burned.

The first paragraph of complaint avers that in running the locomotive past the building, appellant carelessly and negligently allowed sparks and coals of fire to escape and be emitted from the engine, thereby setting fire to the building. In the second paragraph it is averred that appellant's servants so carelessly, recklessly and negligently operated the engine by running at an unusual reckless rate of speed and that by the unusual, careless, and negligent operating the engine so as to cause it to throw out sparks and coals of fire which fell upon the roof of the building, it was set on fire. An engineer might be skilful and his engine in good repair, and still he might so negligently operate the engine as to produce actionable injury. A court can not say that running a train twenty-five miles an hour constitutes actionable negligence. But the answer to the interrogatory as to the manner in which the engine was operated does not mean simply that it was running at that speed; but it means the bringing of the train to that speed in so short a distance. The answer shows that the engine had been stopped and the improper operation of the engine consisted in too suddenly reaching a high rate of speed. It is the law that negligence in the use of proper machinery may be the basis of an action for damages for burning property adjacent to a railroad. *New York, etc., R. Co. v. Baltz*, 141 Ind. 661.

It is true that if, in the necessary use of fire for the production of steam by the usual and best appliances, without negligence, sparks escape and set fire to adjacent property, the loss must be borne by the owner as one of the incidents of the operation of railroads. The use of fire to create mo-

tive power of an engine is both necessary and lawful, and sparks may escape notwithstanding the best appliances known may be used to prevent their escape. So that in order to show a liability for the escape of sparks, this conceded right must be shown to have been exercised in an improper manner. And in determining whether the engine was operated in a proper manner at the particular time and place, all the surrounding circumstances that would tend to throw light upon the question, such as the proximity of buildings, the kind of weather, direction of the wind, and the like, should be considered. A higher degree of care would be required in running an engine through a town where wooden buildings are so near the track as to be exposed to fire from sparks than would be required in running in the open country. The general verdict finds that the engine was negligently operated, and the special answers find that it was not properly operated and specifies in what that consisted. There is nothing in the special answers in irreconcilable conflict with the general verdict.

In *Caswell* v. *Chicago, etc, R. Co.*, 42 Wis. 193, the jury found generally, and also specially found that the company was guilty of negligence "by not using proper precaution, in handling the engine, to prevent the extraordinary escape of sparks in passing the barn." Objection was made to this finding that it was defective as stating a mere conclusion of law. "But" the court said, "it is manifest that it might be difficult, if not impossible, for a party to show, and the jury to find, the precise act or thing which constituted negligence. For instance, the evidence might be perfectly conclusive to show that employes of the company had managed the engine in an unskilful and improper manner, and that a fire had been caused thereby, but a party might not be able to prove the specific negligent act, whether it was in running the train too fast, putting on too much steam, opening drafts or supplying fuel, or in what it was. * * * The jury found

that the employes did not take or use proper precaution, in managing the engine, to prevent the escape of fire. This was a sufficiently specific finding in respect to negligence." See *Fero* v. *Buffalo, etc., R. Co.*, 22 N. Y. 209.

The evidence shows that the train had stopped at a crossing; that the property burned was adjoining appellant's road and was about two blocks farther on from this crossing and that each block is 350 feet long. There is evidence that the train started as rapidly as it could and when along about the building had reached a speed of twenty-five miles an hour; that the engine as it passed this building emitted a good many sparks, was "showering sparks," that the sparks "were all pretty big," that it was throwing live cinders; that the engine was running upon a curve; that the wind was blowing from the track towards the building and the sparks were seen lighting on the roof by witnesses; and within twenty-five or thirty minutes the building was discovered to be on fire; that "they pulled the engine open" at a point just before it passed this building. One of the witnesses who saw the sparks was night watchman at a mill in the vicinity whose duty it was to watch for fires. There is evidence that when the fire was discovered, it was in the roof on the side next the track. Witnesses who saw the building within less than an hour before the fire testified they saw no indications of fire about the building.

The evidence was very conflicting upon some material matters, but this conflict has been considered by the jury and by the trial court upon the motion for a new trial, and with their determination of the matter we can not interfere, no matter what we might think about the preponderance of the evidence. There is evidence to support the verdict.

It is not necessary to prove the origin of such fires by direct or positive evidence; but it may be, and often is, proved by circumstances. If witnesses saw sparks of fire and live cinders thrown upon the roof of the building by the engine a short time before the fire was discovered, and

about the time the train passed, and before it passed persons saw the building, and were near it, and saw no indications of fire, and within twenty or thirty minutes after the engine passed fire was discovered in that part of the building where the sparks were seen to fall, the jury could infer that the fire originated from such sparks and live cinders.    See *Ohio, etc., R. Co.* v. *Trapp,* 4 Ind. App. 69.

In the case of *New York, etc., R. Co.* v. *Baltz,* 141 Ind. 661, cited by counsel, the jury found, by the answer to an interrogatory, that the engine while passing the property burned was properly operated by a skilled engineer.    In the case at bar, the jury found directly the contrary.    In the Baltz case, there was a perfect engine, properly operated by a skilled engineer, and it was held that if sparks from such an engine caused a loss, the company was not liable in the absence of negligence on its part; but that case recognizes the doctrine that negligence in the use of properly equipped engines may create a liability for the burning of property from sparks.    And the case of *Ruffner* v. *Cincinnati, etc., R. Co.,* 34 Ohio St. 96, cited by counsel, recognizes the rule that a liability for the exercise of a right arises when it is shown that the right was exercised negligently, unskilfully or maliciously.

We find no error.    Judgment affirmed.