NELLIE C. DALY *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

### May 26, 1890.

**Railway—Fire set by Locomotive—Presumption of Negligence, how Rebutted.**—Where a fire is kindled upon lands adjoining a railway track by sparks from a locomotive engine, the presumption of negligence arises from that fact without further proof. But this presumption may be met and overcome by satisfactory proof that the engine was properly constructed and managed, and in suitable repair; and, if the uncontradicted evidence on the part of the railway company clearly shows that it has fully performed its duty in these respects, the presumption of negligence is rebutted, and evidence of negligence other than the bare fact that the fire was set by the engine will be necessary in order to warrant a verdict for plaintiff in an action for damages caused by such fire.

Appeal by defendant from an order of the district court for Big Stone county, *C. L. Brown,* J., presiding, refusing a new trial after verdict of $275 for plaintiff.

*W. H. Norris* and *F. W. Root,* for appellant.

*A. S. Crossfield* and *P. J. Daly,* for respondent.

VANDERBURGH, J.[1]  A locomotive with train of cars, passing over defendant's road near plaintiff's premises, set fire, as plaintiff alleges, to dry grass or combustible material near the track, which spread to plaintiff's land, and destroyed certain trees, for the value of which this action is brought. The negligence alleged is faulty and defective construction of the engine, and the failure to provide it with modern

[1] Mitchell, J., took no part in this case.

appliances necessary to prevent sparks and fire escaping, and also negligent management.    Upon the trial the testimony of the witness called by the plaintiff to prove that the engine set fire to the grass shows that he observed it from the train: "Saw a spark come down with the smoke, and set fire to the grass.    The wind was blowing heavy at the time from the northwest, in the direction from where this took place, towards the trees."    On his cross-examination he testified: "There was a good deal of smoke where the fire was set.    I had noticed sparks coming from the engine at other points."    "Those little sparks that I could detect in the smoke, I could see about eight feet from the ground."    "When I saw them, I could see them shine.    They looked like little, fine sparks.    This particular spark, I could see, was alive at a point about eight feet from the ground.    When it was two feet from the ground, it kept getting darker.    The nearer the ground they got, the darker they got.    I did not say that this spark was a live spark shining with fire.    I said it was a dull spark.    I want this jury to understand that there was fire coming from that engine that set fire to the grass."    This is all the evidence there is in relation to the cause of the fire, and the manner in which it was kindled.    It is sufficient to show that it was caused by the engine, and to raise the statutory presumption of negligence on the part of the defendant, either in respect to the management of the engine, its construction, or state of repair.

The jury found specially that the engine "was not out of repair," and that it was "not improperly, unskilfully, or negligently managed at the time the fire so escaped," but that "it escaped because of the defective construction of defendant's locomotive."    The sole question for our consideration is whether the last-named finding is justified by the evidence, or, rather, whether, upon the undisputed evidence in the case, it is clearly erroneous.    The testimony of the engineer in charge of the engine is that he had been an engineer for six years, and had eleven years' experience on and about engines, and that the engine in question "had all the appliances tested at that time, to my knowledge, for preventing fire from escaping from the stack.    I did not notice on that trip that this engine was throwing off any unusual amount of sparks."    "From my experience as an engineer, with an

engine properly constructed, in good condition, carefully and skilfully managed and operated, it is not possible to entirely prevent the escape of sparks from the smoke-stack." "The fuel used on this trip was soft coal. That is the usual fuel used by railroad companies in this part of the country." On the cross-examination he testified: "I have stated that the engine was in perfect condition; that it had all the appliances that are necessary to make an engine perfect, in use at that time. There were other appliances being tested. I have noticed that the Northwest took the lead in that respect. In my experience as an engineer, I have never seen an engine with any appliance on but what more or less sparks would escape. There may be such appliances, but I have never seen them. I do not think there is one at this time. If there was any, I did not have any on that engine. The appliances on that engine to prevent the free emission of sparks and fire that were necessary to be put into an engine were: In the first place, in the stack there was a cone with the point projecting down. When the sparks come up, they strike that. Above that there is a netting to stop them coming out. I could not say how large the holes through that netting are. The netting on that engine that I was running at that time was standard. The holes in that netting were not but a little over one-eighth of an inch square. The netting was made of steel wire. I do not know the exact size of the steel wire." Rupert, an engineer of 20 years' experience, in charge of the round-house and shops at Fargo, testified that Sullivan, the engineer in charge of the engine in question, had been running an engine under him for three years, and that his qualifications were first class; that he himself had known the engine for three years, and was in the habit of seeing it almost every day, and was acquainted with its general construction; that it was well constructed, and in good condition; and that it was impossible to entirely prevent the escape of sparks from an engine. There is no evidence in the case tending in any degree to rebut, qualify, or limit the effect of this testimony. The evidence of plaintiff is entirely consistent with it; for it does not appear that the sparks which escaped were not so small or fine as to pass through the standard netting, or to escape, notwithstanding the most approved appliances known or practicable were used; and the

sparks thrown in this case were "fine sparks." It is difficult to see how the emission of sparks with hot ashes and smoke could be entirely or absolutely prevented, especially in the presence of strong winds. In any event, the undisputed evidence in this case is to the contrary. The *onus* rested upon the defendant to show that it was not guilty of negligence in the premises; but the presumption arising from the fire is a disputable one, and may be rebutted by showing that the defendant has used due care and diligence, in the construction of its engine, to avoid the danger, and prevent fire escaping from its engines. And it is difficult to see why, as respects the particular finding under consideration, the evidence introduced by the defendant in this case is not as broad as the presumption, or why it does not satisfactorily rebut any legal inference of faulty or negligent construction of the engine. 2 Shear. & R. Neg. § 676; *Karsen* v. *Milwaukee & St. Paul Ry. Co.*, 29 Minn. 12, (11 N. W. Rep. 122;) *Searles* v. *Manhattan Ry. Co.*, 101 N. Y. 661, (5 N. E. Rep. 65;) *Reading & Columbia R. Co.* v. *Latshaw*, 93 Pa. St. 449. There are no facts or circumstances shown upon which to raise any question as to the credibility of the witnesses; and, as this particular finding of the jury must be considered to be unsupported, and to have influenced the general verdict in the case, there must be a new trial.

Order reversed.