WILLIAM VAN NOSTRAND, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Damages caused by sparks from a locomotive — burden of proof.*

In an action brought to recover damages for the burning of a sawmill, alleged to have been caused by sparks from a locomotive, there are but two grounds on which a defendant, which has used upon its locomotives the best known appliances for arresting sparks, can be held liable, viz., negligence in permitting such appliances for arresting sparks to be out of repair, and negligence in the manner of using the same, the burden of proof in respect to which is upon the plaintiff.

APPEAL by the defendant, The New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Allegany on the 1st day of November, 1892, upon the verdict of a jury rendered after a trial at the Allegany Circuit, and also from an order of the Supreme Court, made at the Allegany Circuit on the 20th day of October, 1892, denying the defendant's motion for a new trial made upon the minutes.

*J. H. Stevens*, for the appellant.

*G. S. Van Gorder*, for the respondent.

DWIGHT, P. J.:

The action was to recover damages for the burning of a sawmill and appurtenant buildings of the plaintiff, caused, as alleged, by fire communicated by sparks from a locomotive engine of the defendant. There was but one engine in question, which was perfectly well identified and to which all the testimony related. It was an extension front engine and — as was conceded by the plaintiff and charged by the court — its appliances for arresting sparks were, in device and original construction, the best known to be in use. There were, therefore, but two possible grounds upon which the defendant could be charged with liability for the loss complained of, viz. : (1) Negligence in permitting the spark arrester to be out of repair ; (2) negligence in the manner of its use.

In regard to the latter of these propositions, we think it may properly be said that there was no footing for it to stand upon in this case. It is true, no doubt, and the evidence of one of the

defendant's witnesses shows, that the amount of fire which is drawn through the spark arrester may be increased by a greater head. of steam and a more violent exhaust, but. there is no evidence at all that such use was made of the engine when it was passing the plaintiff's mill on the evening of the fire, and such evidence as there is on the subject is to the contrary. It was shown that the track of the railroad was on a down grade to the east from a point a quarter of a mile west of the mill all the way to the neighboring station, which was a mile east; and the engineer testifies that as he passed the top of the grade he shut off his steam and ran by momentum past the mill and to the station, where the train was to stop. There certainly was no occasion for letting on steam, and it was impossible for the engine to labor going down that grade. The evidence also shows that in the extension front engine the wire netting of the spark arrester is fixed in position, not hinged nor in any way movable, so that it cannot be opened at the will of the engineer for greater draft, nor for any other purpose, except by removing its fastenings or breaking or tearing it away.

The case of the plaintiff must, therefore, it seems, have rested wholly on the proposition that the spark arrester of this engine was negligently out of repair, and the affirmative of that proposition was with the plaintiff. As usual, the attempt was made to establish the fact by evidence of escaping sparks, and the witnesses who testified on that subject were a mother and daughter who lived in a house 200 feet north of the railroad and half a mile west of the mill. The date was the first of November and the hour about seven o'clock in the evening. The two women were in the kitchen engaged in washing their dishes after supper; the night was dark, and they caught only a momentary glimpse of the rapidly passing train; the wind was from the east, and they testify that they saw a stream of sparks from the smokestack of the engine which, as nearly as they were able to describe them, seemed to be from the size of a pea to that of a hickory nut. The train had still half a mile to run before it reached the mill, and the latter half of that distance was the down grade before mentioned. This is all the evidence in the case which tends to show that the engine in question at any time emitted sparks larger than those which would pass through the meshes of a netting of the most approved construction and in perfect repair. There

is no evidence that sparks were seen coming from the smokestack within half of a mile of the buildings which were burned, nor that any sparks were driven in the direction of those buildings, nor that cinders from the engine were found anywhere in the vicinity.

On the other hand, there was the uncontradicted testimony, apparently credible, of several persons holding positions of trust and responsibility in the employment of .the defendant, to the effect that both shortly before and shortly after the casualty in question the spark arrester of this engine was found, upon actual inspection, to be in perfect repair — its wire netting permanently fixed in place, without orifice or opening larger than the original meshes, which were conceded to be of the proper size. This evidence was direct and positive, and, unless willfully false, was conclusive against the theory of the defendant's negligence. The evidence to the contrary was purely inferential, and related to nothing more definite than the apparent size to the eye of a momentary observer a dozen rods away of some glowing sparks flying in the darkness.

This is the case *pro* and *con* upon the question of the defendant's negligence, in respect to the repair of the spark arrester of the engine of the defendant which passed the plaintiff's buildings a little time before they were discovered to be on fire. We are of opinion that it fails to present a preponderance of evidence in support of the allegation of the plaintiff in this respect. The fact that the fire was discovered shortly after the passing of the plaintiff's buildings by the engine in question, would bear only remotely upon the question of the defendant's negligence; for, even if the fact was established that the fire was set by sparks from the engine, it must be further shown that those sparks were such as could not pass through the meshes of a spark arrester of approved construction and in perfect repair. In *Searles* v. *Manhattan R. R. Co.* (101 N. Y. 661) the court, by EARL, J., remarks that "the mere proof of the escape of cinders was not sufficient" to show that the spark arrester was defective, "as the evidence showed that their escape could not be avoided and was inevitable."

In this case the court was requested to instruct the jury, in substance, that even if the fire was caused by sparks which passed through the netting, when in good repair, then it was an accident for which the defendant was not liable. To which the court

responded: "I think I will charge that." The defendant was unquestionably entitled to the instruction, and it was, no doubt, the intention of the court to give the defendant the benefit of such instruction, although from what subsequently occurred there is some reason to suppose that the court was not fully understood to that effect; because, after the jury had been out all night, they came in for further instructions and propounded to the court the following question: "In case we find that the mill was burned by sparks from the railroad company's engine, and further find that the spark arrester was in good and sufficient working order, can we give a judgment?" It is plain that this question was fully answered by the instruction above asked for by the defendant, and which the court evidently intended to give to the jury; also, that a categorical answer to the question, as now propounded, required the court to say that, in the case supposed, they should give a verdict for the defendant. The question was not answered categorically, but by a renewed discussion, at some length, of the general principles governing the defendant's liability. There was no further request by counsel for the defendant nor any exception which points to error in the response of the court, but the incident seems to us to emphasize what has already been said of the lack of proof in support of the particular allegation of negligence on the part of the defendant in respect to the repair of the spark arrester. That, as we have seen, was the only respect in which negligence could be charged, and it seems probable that that was the question upon which the jury hesitated, and that if the instruction asked for and intended to be given had been clearly understood the jury would have discovered the lack of a clear preponderance of evidence in support of the plaintiff's allegations in that respect.

We think that the verdict, as finally rendered, was so far against the weight of evidence, upon the question discussed, as would have justified the court at the Circuit in granting the defendant's motion for a new trial. (*Kaare* v. *The Troy S. & I. Co.*, 139 N. Y. 369.)

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, costs to abide the event.