ANDREW O. SOLUM v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 19, 1895.

Nos. 9565—(167).

**Fire Set by Locomotive—Complaint—Burden of Proof.**
*Held,* in an action brought to recover damages caused by fire scattered or thrown by one of defendant's engines, that the complaint was sufficient to put defendant upon its proofs when plaintiff had made a prima facie case under the statute.

**Same—Statutory Presumption.**
*Held,* further, that upon the evidence it was for the jury to determine whether the statutory presumption as to the negligence of defendant's servants when operating and managing the engine had been rebutted and overcome.

[1] Reported in 65 N. W. 443.

Appeal by defendant from a judgment of the district court for Clay county, in favor of plaintiff for $367.02, after a trial before Baxter, J., and a jury.  Affirmed.

The complaint, after alleging defendant's incorporation and its control of the line of railway and plaintiff's ownership, and the value and situation of, certain hay, continued as follows:

"That heretofore on September 27, A. D. 1894, in the forenoon of said day said defendant, while running its steam engines with trains of cars attached over said line of railroad, and when about three or four miles south of Barnesville station, did carelessly and negligently run and manage said engines and carelessly, negligently and wrongfully allow and permit to escape from said engines sparks of fire, and burning cinders so allowed to escape from said engines were scattered and thrown about and fell and alighted on the dead and combustible grass, weeds and stubble carelessly and negligently permitted by said defendant to be and accumulate on and along the right of way of said railroad, and sparks of fire and burning cinders so allowed to escape from said engines and so thrown and scattered as aforesaid ignited and set on fire said grass, weeds and stubble, which fire so ignited communicated with and spread upon the grass and stubble upon the adjoining lands, and was carried thence by the wind in a northerly direction on to the aforementioned premises, where plaintiff's said property was located, and said fire, notwithstanding the efforts of the plaintiff to protect his property, burned, consumed and completely destroyed all of said hay hereinbefore described, all of which is to the damage of the plaintiff in the sum of $690.  That said fire and loss of plaintiff's property was caused wholly by the carelessness and negligence of defendant and its employés and by reason of the imperfect and unsafe condition of said engines and the careless and negligent and unsafe management of said engines by defendant and its employés, and by defendant's carelessly and negligently permitting and allowing the dry and inflammable grass, weeds and stubble to stand and remain along the right of way of said railroad, and that plaintiff in no way contributed to said injury and destruction of property but used all reasonable means and precautions to protect said property from said fire."

*W. E. Dodge*, for appellant.

*Chas. S. Marden* and *M. R. Tyler*, for respondent.

COLLINS, J.[2]  This was a fire case, in which a verdict was had against defendant corporation, the appeal being from the judgment.

Upon the argument here appellant's counsel criticised the complaint, but, taking their own construction of it as found in their fourth request to charge, it alleged that defendant's locomotive was faulty in construction or repair, and that it was improperly or negligently managed or controlled at the time of or immediately before the fire; and further, that defendant was negligent in failing to keep its right of way cleared of grass, rubbish, and other combustible material prior to the setting of the fire.  The allegations of the complaint were ample to put defendant upon its proofs when plaintiff had made a prima facie case under the statute.  See Weber v. Winona & St. P. R. Co., supra, p. 66, 65 N. W. 93.

It is contended that the court below erred in denying defendant's motion to direct a verdict in its favor at the close of the testimony, and again when refusing to instruct as requested, which instructions amounted to a direction to the jury to find against the plaintiff. Two reasons are urged in support of this claim of error,—one, that it was not shown that the fire originated from sparks or cinders scattered or thrown from defendant's locomotive; and the other, that if this proposition is untenable, and the proof as to the cause or origin of the fire was adequate, the statutory presumption as to defects in the locomotive and negligence in its management was fully rebutted and completely overcome by proof clear, conclusive, to the point, and as broad as the presumption that the locomotive was in perfect condition and repair, was equipped with the best-known appliances for preventing the escape of fire, and was properly and skillfully managed and operated by competent employés.

We do not deem it necessary to follow counsel in their efforts to show that there was no evidence that the fire originated from the locomotive numbered 111, which on that particular morning drew the passenger train known as "No. 2" from Barnesville to St. Paul. None of the witnesses produced by plaintiff were on the exact spot when or where the fire started, but several saw it start, and stated that immediately after the train passed going southerly, about 10 o'clock in the morning of a clear autumn day, they saw the fire spring

---

[2] Buck, J., absent, took no part.

up, and run rapidly in a northerly direction. One, at least, of these witnesses was not over three-fourths of a mile away, traveling upon the highway, and with an unobstructed view across the prairie. She testified that she plainly saw the fire break out "right alongside the track, right alongside the ditch, between the ditch and the ties." Common experience teaches us that her statement that at the distance specified she saw the fire spring up at the point mentioned was not incredible, and the jury had a right to believe it. There was an abundance of evidence to justify the finding that the fire in question was set as alleged in the complaint, namely, by defendant's locomotive, and in the combustible materials which had accumulated on its right of way.

We will now consider the remaining question: Were the statutory presumptions completely and conclusively rebutted and overthrown by defendant's proofs?

The fire started about three miles south of Barnesville, upon quite a level plain, the track being slightly up grade as the train was running. The train consisted of but four cars, and the engine in question had been attached at Barnesville. The wind blew quite hard from the southwest. At the place in question the season's accumulation of grass, weeds, and stubble had withered so that it would easily ignite. There was evidence that the section men had not removed the dry material because the weather had been unfavorable, but the latter fact would not excuse negligence, either as to repairs or management. Increased hazards might require increased care and vigilance on the part of those in charge of the engine. Now, putting aside all evidence concerning the condition of the locomotive, and admitting that it was conclusively shown that it was equipped with the best of all known appliances for preventing the escape of fire, and was in perfect condition, let us examine the evidence relating to its management at the time the fire was set.

In response to direct questions, the engineer stated that the dampers of the ash pan were in the usual and customary position; that coal was put in the fire box by the fireman soon after leaving Barnesville, about half a mile from the station, as was the universal practice; that the fireman was competent in every way, and that there was nothing unusual in the manner he fired the engine that day. He also testified that in ascending the slight grade we have mentioned

he used steam. He was asked, "How did you handle the engine in leaving Barnesville?" and answered, "In the usual way we always do." The fireman testified that he put in coal at the place fixed by the engineer, "about three scoops," and that he did not "do anything out of the ordinary." In these statements as to what the testimony was, and in these excerpts from the testimony, we have all of the evidence which relates or refers to the manner in which the locomotive was handled and managed upon the occasion in question.

Giving full force and effect to every word, it shows, at most, that the locomotive was handled in the usual way, and that nothing extraordinary was done. Whether the usual, customary, and ordinary way was a prudent and careful way was left for conjecture and surmise, for no one could contend that, because the usual, customary, and ordinary method was observed, it was necessarily the prudent and careful way, especially in view of the conceded fact that the wind was blowing hard, and the land adjacent to the roadbed, within the right of way, was covered with very combustible material. It might well be contended that under such circumstances more than ordinary skill and care was required of the engineer and fireman, and that to rebut and overcome the presumption of negligence it should have been shown that skill and care commensurate with the occasion and the circumstances were observed. It was incumbent upon the defendant, if it would meet and overcome the statutory presumption, to show affirmatively that the engineer and fireman did their duty in the premises, and were not, in fact, guilty of any negligence. This could not be done by simply showing that they did not do anything out of the ordinary, when the circumstances and situation may have required more than ordinary skill and care. Even the opinion of an engineer that he operated his engine with great care has been held not to be such satisfactory proof of the fact a defendant railway company is bound to establish as the jury may reasonably require. Johnson v. Chicago, M. & St. P. R. Co., 31 Minn. 57, 16 N. W. 488. In the recent case of Burud v. Great Northern R. Co., 62 Minn. 243, 64 N. W. 562, this court said that, unless the rebutting evidence is conclusive, the question of negligence is for the jury; and if, for any cause, the evidence is inconclusive in its nature,—as, for example, where different conclusions may reasonably be drawn from it,—the cause is one for the jury, not one for the court. From an examina-

tion of the evidence in regard to the management of the locomotive, all of which has been stated, we conclude that it was not conclusive, that different conclusions might easily be drawn from it, and that the statutory presumption was not rebutted.

Judgment affirmed.