FRANK RILEY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

February 3, 1898.

Nos. 10,863—(286).

**Appeal—Amendments to "Case" after Motion for New Trial—Review.**

The defendant made a motion for a new trial upon a "settled case." After the motion had been denied, and an appeal taken to this court, the defendant procured amendments to the settled case. *Held*, that correctness of the court's action in denying a new trial must be determined upon the settled case upon which the motion was made and decided.

**Same—Misconduct of Counsel—Discretion of Court.**

Also that the trial court did not err in denying a new trial on the ground of the alleged misconduct of counsel in making improper statements in the presence of the jury during the trial. Applications for a new trial on that ground are largely addressed to the sound discretion of the trial court.

**Negligence — Ordinary Care — Fire Set by Locomotive — Charge to Jury.**

In an action for damages caused by fire scattered from one of defendant's locomotives, it appeared that the country was unusually dry, and the vegetation very inflammable, particularly along that part of defendant's road where the fire in question occurred; also that on that occasion there was a very high wind. The court instructed the jury, in substance, that "ordinary care" was a relative term, and depended on circumstances and conditions; that in passing upon the management of defendant's engine they were to consider the conditions then prevailing, such as the dryness of the grasses, stubble, and other vegetation near the track, and the speed and direction of the wind; but, on the other hand, they must give due consideration to the necessities of the railway service, and the duty of the defendant to its patrons and the public. *Held* not error.

Action in the district court for Winona county to recover $970. The Fire Association of Philadelphia, having paid plaintiff under its insurance policy $500 upon his loss, intervened and asked for judgment in that sum against defendant. From an order, Snow, J., denying its motion for a new trial, plaintiff appealed. Affirmed.

[1] Reported in 74 N. W. 171.

*M. B. Webber*, for appellant.

*P. Fitzpatrick*, for plaintiff and respondent.

*Brown & Abbott*, for intervenor and respondent.

MITCHELL, J.

This was the ordinary action for damages caused by fire scattered from one of defendant's locomotives, the negligence charged going to its original improper construction, its being subsequently permitted to remain out of repair, and also to its negligent operation. While the amount in controversy was not very large, and the legal questions involved neither novel nor difficult, the subject of the fire has been very sharply contested. Flanaghan v. Chicago, 65 Minn. 112, 67 N. W. 794; Riley v. Chicago, 67 Minn. 165, 69 N. W. 718.

In addition to their general verdict for the plaintiff, the jury made special findings: (1) That the defendant's locomotive was not supplied with one of the then best approved modern spark arresters adopted by railroads; (2) that the locomotive was out of repair; (3) that it was not properly, skillfully and carefully managed. There are no assignments of error challenging the sufficiency of the evidence to justify either the general verdict or any of the special findings.

The defendant moved for a new trial upon a settled case, and this appeal is from the order denying the motion. Since the appeal was taken, the defendant has procured amendments of the settled case, so as to include some things not contained in it when the motion for a new trial was made and denied. The correctness of the court's ruling, in denying the motion for a new trial, must be determined upon the case on which the motion was made and decided. Hence the assignments of error based upon the subsequent amendments cannot be considered. This excludes from consideration some of the points discussed by counsel.

The several assignments relating to the alleged misconduct of plaintiff's counsel, in making improper statements on the trial, may be all considered together. There is nothing in the first one, unless it is reversible error for counsel to offer evidence without first laying the proper foundation for it. Counsel having inquired of a

witness whether this train (the fast mail), had set other fires shortly before or after the one in question, in answer to an inquiry by the court on what ground he thought it was competent, replied that it would show that there was something wrong with the engine. The court then asked if the question related to the same engine, to which counsel replied that it was the same train, but he could not tell whether it was the same engine, and therefore the court excluded the question.

Counsel for defendant himself introduced evidence that it was always very careful to employ the most skillful and competent men on the fast mail, and that the fireman on this engine was both competent and careful. Then followed this cross-examination of defendant's witness:

"Q. Was he [the fireman] not hired on the night of the strike for the first time?" (Objected to by defendant's counsel, who took exception to the remark of counsel with reference to the strike.) "Q. I will ask him if he was not hired on the 9th day of July, 1894," (a few weeks before the fire). (Defendant's counsel objected to the remark of the counsel referring to any strike on the road at all.) "Court: The objection will be sustained, and the jury will disregard any reference to the strike on the road."

It having subsequently cropped out in the evidence that the fireman had left the employment of the defendant a month or two after the fire, defendant's counsel asked him why he left. This having been objected to, counsel stated that he wished to show that it was not on account of any incompetency, whereupon plaintiff's counsel remarked: "I would like to show the reason that he was employed,—on account of the strike." To this remark defendant's counsel took exception. The court promptly said:

"An exception may be taken, perhaps, to the remarks of counsel on both sides. I will say right here, the statements of counsel in regard to these matters are not to be considered as evidence at all. The jury will take the evidence from the mouths of the witnesses who are under oath, and not from the mouths of the attorneys, who are not under oath."

The side remark of counsel for plaintiff as to the strike was not proper, especially as the court had previously said that the jury should disregard any reference to it. Neither will an instruction

of the court to the jury to disregard improper remarks of counsel always remove their effect from the minds of jurors. But an application for a new trial on this ground is largely addressed to the sound discretion of the trial judge, who is in a much better position than an appellate court to judge of the motives which induced the conduct of counsel and of the influence upon the jury of the conduct complained of. Knowles v. Van Gorder, 23 Minn. 197; Loucks v. Chicago, 31 Minn. 526, 18 N. W. 651; Watson v. St. Paul, 42 Minn. 46, 43 N. W. 904; Olson v. Gjertsen, 42 Minn. 407, 44 N. W. 306. We would not be justified in holding that the trial judge did not exercise his discretion wisely in this case.

The remark of counsel in his closing address to the jury was not legitimate or proper argument. But as the court, upon objection being made, immediately told the jury that it was improper, and that there was no evidence to justify it, and that they should disregard it, and as the subject does not appear to have been again alluded to by counsel in his argument, we would not be justified in overruling the trial court by holding this a sufficient ground for granting a new trial.

2. It appeared from the evidence that, at the time of the fire (August, 1894), the country was unusually dry, and vegetation very inflammable; also that this fire ocurred on the level sandy prairie between Minnesota City and Winona, where the land was particularly parched, and the vegetation consisting largely of dry stubble was very inflammable, and that on the night in question there was a very high wind; also that the fireman was familiar with the character and condition of the land, and knew that there were hay and grain stacks along and in the vicinity of the railroad. The fireman was called as a witness for the defendant, and testified that he fired properly and carefully, in accordance with his usual custom. On cross-examination, plaintiff's counsel was permitted, over defendant's objection, to ask him whether, when the train went past plaintiff's premises on the night in question, he had any regard, in throwing in coal, for the protection of these stacks, and whether he took these stacks into consideration, etc.

In his charge to the jury, the court instructed the jury that "ordinary care" was a relative term; that what would be regarded as

ordinary care, under certain circumstances, might not be ordinary care under other circumstances and conditions; and that for this reason, in passing upon defendant's negligence, they should take into account the character of the country through which the road ran, the risk to adjoining property to be guarded against, the conditions then prevailing, such as the degree of dryness, or the reverse, of the grass stubble or other material near the track, and the speed and direction of the wind; but that, on the other hand, they should give due consideration to the necessities of the railway service, and the duty of the company to its patrons and the public.

It is unquestionably true that it is necessary that railway trains must be run with regularity, and on schedule time. Their movements cannot be varied with wind and weather. Engineers and firemen must do whatever is reasonably necessary to be done in order to run their trains with regularity, and in doing this they cannot be expected to have presently in mind the existence or location of every piece of combustible property along the route. But, making due allowance for these considerations, the same rule of duty applies to them as to other people, viz. to exercise a degree of care commensurate with the situation. It appears from the evidence, and it is a matter of common knowledge, that the liability of fires being started by an engine depends somewhat upon the manner of firing; and when the country is very dry, and vegetation very easily ignited, a fireman should be correspondingly careful, and use all reasonable means, consistent with the necessities of the railway service, to prevent the escape of fire. Such, in substance, is the measure of duty announced in the instruction of the court. While the questions to the witness which are objected to may not have been formulated according to this rule of duty, yet we think that they were within the limits of legitimate cross-examination, which are always, to some extent, within the discretion of the trial court.

3. The court excluded the question to the fireman why he left the employment of the defendant, counsel stating that the object was to show that it was not because of incompetency. In excluding the evidence, the court remarked that that would be presumed without any proof. No evidence had been offered that he was discharged

at all, or, if so, that it was because of incompetency. There was no error in the court's ruling.

4. It appeared from the evidence that the spark arrester used on all of defendant's engines was wire screen of a standard or uniform size of meshes. It also appeared that several western roads had almost entirely discarded wire screens, and had adopted perforated steel plate in its place. Much of the evidence introduced on the trial was upon the questions whether the wire screen or the perforated steel plate was the better. protection against the escape of fire, and whether wire screen might not have been successfully used with smaller meshes than those in the screen used by the defendant. Considerable of this evidence may not have been of much probative value upon the real issues in the case, and in asking some of the questions counsel may have had in mind a wrong standard of defendant's duty in the premises, but we discover no errors in the rulings of the court in the admission of evidence. If counsel for the defendant apprehended that the jury might get from plaintiff's line of examination an incorrect idea as to the measure of defendant's duty, he should have asked the court for special instructions on the subject. This disposes of all the assignments of error relating to matters appearing in the settled case upon which the motion for a new trial was made and decided.

Order affirmed.