CONTINENTAL INSURANCE COMPANY v. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY.[1]

March 30, 1906.

Nos. 14,641—(193).

**Fire—Burden of Proof.**

In an action against a railroad company for damages caused by fire
from a locomotive, G. S. 1894, § 2700, throws the burden of proof upon the
defendant to rebut the presumption of actionable negligence on its part,
upon proof by the plaintiff that a fire was kindled upon his lands adjoin-
ing a railroad track by sparks from its locomotive.

**Negligence—Rebuttal.**

The defendant may rebut this presumption by sufficient proof of its non-
connection as cause, or of such construction, equipment, maintenance, and
operation of the engine as was required in the exercise of care commen-
surate with all the circumstances of the particular case.  Such rebuttal
proof must conform as to character and extent to the standard by which
in ordinary cases is measured the propriety of a holding by a trial court
that a defendant against whom a prima facie case of negligence has been
made is free from fault as a matter of law.

**Same.**

The adequacy of such proof by a defendant must also be determined
in view of any other facts, tending to show negligence, appearing in the
testimony in addition to those sufficient to give rise to the statutory pre-
sumption which tend to show negligence.

**Question for Jury.**

Unless the rebutting evidence is conclusive as to both the facts and the
inferences reasonably to be drawn from them, the question is for the
jury.  In this case, the rebuttal testimony is *held* not to have been suffi-
cient to have justified the trial court in taking the case from the jury, be-
cause:

First. The plaintiff introduced affirmative circumstantial evidence of
negligence in addition to proof of the facts essential to raise the statutory
presumption of defendant's negligence.

Second. The rebuttal testimony depended in part on evidence of wit-
nesses whose credibility was for the jury.

Third. It consisted largely (1) of expert testimony to the effect that no
engine could be practically so operated as not to start fires at the distance

[1] Reported in 107 N. W. 548.

here involved, which was inconclusive and not entirely consistent with defendant's freedom from negligence; (2) and of expert testimony that the engine was operated in a careful manner, which was based upon too narrow an hypothesis.

**Book of Rules.**

The trial court properly excluded from evidence the book of rules of defendant, which contained private rules regulating the conduct of defendant's own business.

Appeal by plaintiff from an order of the district court for Winona county, Snow, J., denying a motion for a new trial, after a trial and directed verdict in favor of defendant. Reversed.

*John Moonan,* for appellant.

*Brown, Abbott & Somsen,* for respondent.

JAGGARD, J.

This was an action to recover damages caused by a fire set by the engine of defendant and respondent. The plaintiff and appellant, an insurance company, paid the loss on property insured by it and was subrogated to the rights of the insured against the defendant. At the close of the testimony, the court directed a verdict for defendant. From a motion denying a new trial, this appeal was taken.

The statute of this state (G. S. 1894, § 2700) provides that the owner of property burned by fire thrown from an engine can recover damages from the railroad company without being required to show defects in the engine or negligence on the part of employees. The fact of fire is prima facie evidence of negligence, The cases construing this section in this state, and similar statutes in other states, are not harmonious. Many of them hold that it is necessarily for the jury to weigh the statutory presumption of negligence in the balance against the evidence of defendant in rebuttal. Greenfield v. Chicago, 83 Iowa, 270, 49 N. W. 95; West Side v. Chicago (Iowa) 95 N. W. 193; Glanz v. Chicago (Iowa) 93 N. W. 575; Hemmi v. Chicago (Iowa) 70 N. W. 746; Great Northern Ry. Co. v. Coats, 115 Fed. 452, 53 C. C. A. 382; Atchison v. Bales, 16 Kan. 252; Atchison v. Geiser, 68 Kan. 281, 75 Pac. 68; St. Louis v. Funk, 85 Ill. 460 (cf. Chicago v. Quaintance, 58 Ill. 389); Sappington v. Missouri, 14 Mo. App. 86, 90; Palmer v. Missouri, 76 Mo. 217; Huff

v. Missouri, 17 Mo. App. 356; Babcock v. Chicago, 62 Iowa, 593, 13 N. W. 740, 17 N. W. 909; Id., 72 Iowa, 197, 28 N. W. 644, 38 N. W. 628; Hagan v. Chicago, 86 Mich. 615, 49 N. W. 509; 2 Thompson, Negl. 840. Railway companies argue against this rule that it amounts to judicial legislation, inasmuch as it converts a presumption, rebuttable under the statute, into an unrebuttable one in effect, and that it deprives them in every instance of the right to try the force of the rebuttable evidence against the presumption before the court, and enables incendiaries in practical result to sell them their crops and improvements at a price fixed by hostile juries.

According to other authorities, rebuttal by proof that the engine was properly constructed, equipped, inspected, maintained, and operated is as broad as the presumption of negligence, and justifies the trial court in directing a verdict for defendant. Daly v. Chicago, M. & St. P. Ry. Co., 43 Minn. 319, 45 N. W. 611; Rosen v. Chicago G. W. Ry. Co., 83 Fed. 300, 27 C. C. A. 534; Anderson v. Oregon, 45 Ore. 211, 77 Pac. 119; Indiana v. Craig, 14 Ill. App. 407; Gulf Co. v. Benson, 69 Tex. 407, 5 S. W. 822, 5 Am. St. Rep. 74; Missouri v. Stafford, 13 Tex. Civ. App. 192, 31 S. W. 319; Menominee v. Milwaukee, 91 Wis. 447, 65 N. W. 176; Smith v. Northern Pacific, 3 N. D. 17, 23, 53 N. W. 173; Louisville v. Marbury, 125 Ala. 237, 28 South. 438. Cf. Kurz v. Milwaukee, 84 Wis. 171, 53 N. W. 850; Johnson v. Northern, 1 N. D. 354, 48 N. W. 227; 2 Thompson, Negl. 796, note 30.

In language, more picturesque than temperate, Judge Thompson has insisted that the rule last stated involves a complete obfuscation of the line which separates the province of the court and the province of the jury, and that here is a case where evidence of a cogent nature is opposed to the testimony of the agents and employees of a railroad company, who, as experience will show, will, in almost every case swear up to the necessary mark and to whom nothing is more common than to lie on the witness stand. "In nearly every such case the railway company will come forward with its creatures and prove that the engine was a good one, that it was suitably equipped with appliances to prevent scattering fire; and many courts have held such evidence to constitute a defense, and, assuming its truthfulness,

have taken the question from the jury, thus performing their office in passing upon the truthfulness of the evidence in the case. The meadow, the stack or the barn of the miserable farmer has been burned up by the railroad company, for its own profit, and the farmer, in his misery and wretchedness, finds himself without any other remedy than to rail at the lawyers and judges, or to put dynamite on the railroad track." 2 Thompson, Negl. 840, 844, 796.

The contrast of the two views was well illustrated and judicially stated in a leading recent case, Great Northern Ry. Co. v. Coats, 115 Fed. 452, 53 C. C. A. 382. Thayer, J., for the majority of the court, held that where the company produced testimony not directly contradicted, tending to show that the locomotive was properly constructed, equipped, inspected, and operated, it was the province of the jury to determine whether the statutory presumption of negligence was overcome. "We cannot well understand," he said, "upon what theory the statement of persons who were in charge of a locomotive when it occasioned a disastrous fire, that it was properly and prudently managed, etc., must be accepted by a court as conclusive, and as overturning, as a matter of law, the presumption of negligence raised by other testimony. It would seem, rather, that the triors of the fact ought, in such a case, to consider how far the interest of such witnesses—their natural desire to absolve themselves from all blame —may have colored their evidence, and how far their statements are consistent with other facts and circumstances which have been proven. If a court undertakes to weigh such evidence, and say that the witnesses are credible, and also to decide as to the effect of the proof, it plainly assumes the functions of the jury or at least a function which is discharged by the jury in other cases." On the other hand, Sanborn, J., dissenting, after a reference to a number of cases supporting his views, and a consideration of the nature of rebuttable presumptions, held that: "The result is that it was in the first instance a question of law for the court below in this case whether or not the presumption of negligence in the operation of the defendant's locomotive, which arose from the scattering of the sparks or coals and the setting of the fire, was overcome by the testimony for the defendant; and if the testimony of its proper employees that there

was no negligence in the operation of the engine was uncontradicted, and was as broad as the presumption, then that presumption was overcome, as a matter of law, and it was the duty of the trial court to withdraw this charge of negligence from the consideration of the jury on the motion of the defendant." The opinion of the majority of that court was followed and approved in all respects in the recent and well-considered case of Atchison v. Geiser, 68 Kan. 281, 75 Pac. 68.

Much of the apparent inconsistency between these two lines of cases arises from the natural but incorrect extensions of formulæ of the rule beyond the just determination of particular states of facts into general propositions of law. Thus in the federal case quoted, the majority of the court found it "profitable" to refer to other independent evidence of negligence probably sufficient to have justified its conclusion, as for example, to that which concerned the operations of the train with reference to the care which ought to have been exercised on a very windy day past a place where there was considerable combustible material on the right of way and buildings were near by.

Under the decisions of this state, the rule is that the statute throws the burden of proof upon the defendant to rebut the presumption of actionable negligence on its part, upon proof by the plaintiff that a fire was kindled upon his lands adjoining a railway track by sparks from defendant's locomotive; that the defendant may rebut this presumption by sufficient proof of its nonconnection as cause or of such construction, equipment, maintenance, and operation of the engine as was required in the exercise of care commensurate with all the circumstances of the particular case. Such rebuttal proof must conform, as to character and extent, to the standard, by which in ordinary cases is measured the propriety of a holding by a trial court that a defendant, against whom a prima facie case of negligence has been made, is free from fault, as a matter of law. The adequacy of such proof by a defendant must also be determined in view of any other facts appearing in the testimony in addition to those sufficient to give rise to the statutory presumption, which tend to show negligence. Unless the rebutting evidence as to both the facts and the inferences reasonably to be drawn from them is conclusive, the question is for the jury. Burud

v. Great Northern Ry. Co., 62 Minn. 243, 64 N. W. 562 (which was decided after express reference to Karsen v. Milwaukee & St. P. Ry. Co., 29 Minn. 12, 11 N. W. 122) ; Daly v. Chicago, M. & St. P. Ry. Co., 43 Minn. 319, 322, 45 N. W. 611, 612; Sibilrud v. Minneapolis & St. L. Ry. Co., 29 Minn. 58, 11 N. W. 146; Johnson v. Chicago, M. & St. P. Ry. Co., 31 Minn. 57, 16 N. W. 488; Nichols v. Chicago, St. P., M. & O. Ry. Co., 36 Minn. 452, 32 N. W. 176; Dean v. Chicago, M. & St. P. Ry. Co., 39 Minn. 413, 40 N. W. 270, 12 Am. St. Rep. 659; Doyscher v. Chicago, M. & St. P. Ry. Co., 43 Minn. 427, 45 N. W. 719; Wilson v. Northern Pac. R. Co., 43 Minn. 519, 45 N. W. 1132; De Camp v. Chicago, St. P., M. & O. Ry. Co., 62 Minn. 207, 64 N. W. 392; Solum v. Great Northern Ry. Co., 63 Minn. 233, 65 N. W. 443; Rosen v. Chicago, 83 Fed. 300, 27 C. C. A. 534.

In this case, plaintiff established the facts sufficient to give rise to the statutory presumption. To rebut this presumption the defense was: First, that the engine was equipped with the best approved modern appliances for the arrest of sparks and to prevent the escape of cinders, all of which were in the best condition; second, that the engine was operated not only by men of unquestioned skill, but in such manner, at the time in question, as to reduce the discharge of sparks to a minimun; third, that no locomotive can be so constructed and practically operated as to prevent the escape of fire as is claimed to have occurred in this case. We are of opinion that this rebuttal testimony was not sufficient to have justified the trial court in taking the case from the jury, because, first, the plaintiff introduced affirmative circumstantial evidence of negligence in addition to proof of the facts essential to raise the statutory presumption of defendant's negligence; second, the rebuttal testimony depended in part on evidence of witnesses whose credibility was for the jury; third, it consisted largely (1) of expert testimony, to the effect that no engine could be practically so operated as not to start fires at the distance here involved, which was inconclusive and not entirely consistent, and (2) of expert testimony that the engine was operated in a careful manner, which was based upon too narrow an hypothesis.

First. Where there is other evidence of negligence in addition to proof of the facts which was prerequisite to the statutory presumption

of negligence, the question is for the jury and not for the court.  Preece v. Rio Grande, 24 Utah, 493, 68 Pac. 413.  Such evidence may and ordinarily must be circumstantial in character.  Atchison v. Bales, 16 Kan. 252; Philadelphia v. Schultz, 93 Pa. St. 341, 344; Jacksonville v. Peninsular, 27 Fla. 1, 9 South. 661, 17 L. R. A. 33, 47.  "It is manifest that it might be difficult if not impossible for a party to show and the jury to find the precise act or thing which constituted negligence.  For instance, the evidence might be perfectly conclusive to show that the employees of the company had managed the engine in an unskilful and improper manner and that a fire had been caused thereby, but a party might not be able to prove the specific negligent act, whether it was in running the train too fast, putting on too much steam, opening drafts or supplying fuel or in what it was."  Caswell v. Chicago, 42 Wis. 193, followed in McDoel v. Gill, 23 Ind. App. 95, 53 N. E. 956.  "From the multitude of decisions in cases of this kind, it appears that the courts have been extremely liberal in allowing a recovery.  * * * Even in cases where the proof of negligence was cast upon the plaintiff, slight circumstances have been held sufficient to sustain the burden."  Elliott, J., in Union Pacific Ry. Co. v. De Busk, 12 Colo. 294, 20 Pac. 752, 3 L. R. A. 350, 13 Am. St. Rep. 221, 225.  And see Dean v. Chicago, M. & St. P. Ry. Co., 39 Minn. 413, 40 N. W. 270, 12 Am. St. Rep. 641; Hoffman v. Chicago, M. & St. P. Ry. Co., 43 Minn. 334, 45 N. W. 608.

Negligence may be affirmatively proved by the emission of cinders unusual in quantity or size or carried to an unusual height or distance. Anderson v. Oregon, 45 Ore. 211, 77 Pac. 119, collecting cases at page 122; Jacksonville v. Peninsular, 27 Fla. 1, 9 South. 661, 17 L. R. A. 33; Bedell v. Long Island, 44 N. Y. 367, 4 Am. Rep. 688. Although such circumstantial evidence is not of the most satisfactory or conclusive character the jury should weigh it.  Johnson v. Chicago, M. & St. P. Ry. Co., supra; O'Neill v. Railway Co., 115 N. Y. 579, 583, 22 N. E. 217, 5 L. R. A. 591; Henry v. Southern, 50 Cal. 176; Great Western v. Haworth, 39 Ill. 346; Chicago v. Quaintance, 58 Ill. 389; Texas v. Scottish Union (Tex. Civ. App.) 73 S. W. 1088; Glanz v. Chicago (Iowa) 93 N. W. 575.  In Huyett v. Philadelphia, 23 Pa. St. 373, Lowrie, J., said:

"When we find fires started by a locomotive at distances from 80 to 150 feet from the road how can we say that there is no evidence of carelessness?" That a fire was started at a distance of 60 feet (Chicago v. McCahill, 56 Ill. 28), of 63 feet (Louisville v. Malone, 109 Ala. 509, 20 South. 33), of 65 feet (Louisville v. Black, 54 Ill. App. 82, 85), or of 100 feet (Illinois v. McClelland, 42 Ill. 355), has been held to be substantive and independent evidence of defendant's negligence to be considered by the jury. And see Hull v. Sacramento, 14 Cal. 388; Anderson v. Oregon, supra; Sibilrud v. Minneapolis & St. L. Ry. Co., 29 Minn. 58, 11 N. W. 146. On the other hand, in Smith v. Northern Pacific R. Co., 3 N. D. 17, 24, 53 N. W. 173, it is held that the mere fact that sparks set fire out at a distance of one hundred eighteen feet from the track in a heavy wind is not affirmative evidence of negligence. That case has been severely criticised (2 Thompson, Neg. 796), and is not in harmony with the weight or the better reason of the authorities.

There was evidence in this case of an unusual emission of sparks, almost burning the witness, a neighboring farmer (Sassee) and terrifying his team, which had been familiar with the track for sixteen years. This was at a distance of six or eight rods from the right of way. This witness saw the fire on the premises of the insured started at the same time. The facts that the fire was set at a distance of one hundred seven feet, as the defendant insists, or of one hundred thirty or one hundred fifty feet, as the plaintiff insists, from the track, and that the point of ignition was about fifteen feet above the ground, and other facts to which this witness testified, were additional circumstances to be considered by the jury. That so terrific a wind as in this case—which will subsequently be fully described—did not put out the sparks was also for the jury, both from the defendant's point of view, that the only effect of a considerable exhaust would have been to have sent the sparks high in the air above the engine and that such a wind would carry the sparks and keep them alive for the very short time required to cover the distance, and from the plaintiff's point of view, that such a wind would have put out any ordinary cinder like a blow from a club and that therefore this cinder must have left the engine in a state of negligently incomplete combustion

and that the height of the point of ignition argued an excessive draft.

Second. The testimony as to the actual operation of the engine in such cases is inevitably, although not of necessity exclusively, dependent upon the testimony of the company's servants. The probative force of such testimony is directly affected by the fact of their employment and, when it is given by the firemen and engineer, it is also affected by their natural tendency to shield themselves from the imputation of fault in causing the fire. See Thayer, J., in Great Northern Ry. Co. v. Coats, supra, and Nichols v. Chicago, St. P., M. & O. Ry. Co., 36 Minn. 452, 32 N. W. 176; Doyscher v. Chicago, M. & St. P. Ry. Co., 43 Minn. 428, 45 N. W. 719. The same considerations would also apply, for example, to the men whose duty it is to clean out the cinders which accumulate in front of the engine. See Dean v. Chicago, M. & St. P. Ry. Co., 39 Minn. 413, 40 N. W. 270, 72 Am. St. Rep. 659. In the case at bar, in some measure, the testimony of the engineer as to what he did, but in a larger measure, testimony as to stoking given by the fireman, whose management the engineer naturally and properly did not follow closely, is subject to this scrutiny. The mere facts of employment and interest of such witnesses, standing alone, are not necessarily sufficient to require the submission of their credibility to the jury. They constitute, however, one consideration. Another such consideration is to be found in the character of the testimony itself as disclosed by an analytical comparison of the direct and cross-examination of each witness. In this case, such comparison injuriously affects the weight to be given the testimony, not by showing any considerable contradiction or inconsistency and not at all by showing any personal dereliction on the part of any of the witnesses, but rather by evidencing a vague and general memory of what the employees did upon this occasion. It was proper, accordingly, for the jury to consider how far this affected the credibility of their testimony. See Wilson v. Northern Pacific R. Co., 43 Minn. 519, 45 N. W. 1132. The conclusion naturally to be drawn from their testimony is moreover inconsistent in some degree with the inference to be drawn from the other facts and circumstances contained in the record, to part of which reference has just been made. Ac-

cordingly their testimony could not properly be held to be indisputable in this case.

Third. Defendant's rebuttal testimony is based, in large part, upon inconclusive expert evidence. The testimony of experts does not ordinarily amount to a demonstration. 3 Current Law, 1382. It is designed to aid jurymen in arriving at a just conclusion, but it does not exclude the exercise of their own common sense and general knowledge of the subject of inquiry, and if, upon the consideration of the entire testimony, and giving to each part the force to which it is entitled, they are satisfied that the opinions of the experts are erroneous, they have a right to say so by their verdict. Stevens v. City of Minneapolis, 42 Minn. 136, 43 N. W. 842; Olson v. Gjertsen, 42 Minn. 407, 44 N. W. 306; Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028.

An able and exhaustive consideration and collection of the cases on this subject will be found in 5 Enc. Evi. 67. At the one extreme, because of a certainty which may be even mathematical, as in engineering and mechanical problems, the truth of experts' testimony may be accepted by a court as a matter of law. At the other extreme, because of paucity of knowledge, inaccuracies of observation, the conflict of opinion and the infirmities of human nature, as in microscopical examinations of blood, it presents a question of fact for the jury. See Cooper v. State, 23 Tex. 331. The construction, equipment, and inspection of a locomotive, in large measure fall within the former class, and concern what are now simple physical facts naturally open to satisfactory observation, involving only well-established and elementary laws of physics and mechanics. In this case it may be conceded, for present purposes only, that as to construction, equipment, and permanent condition of its engine defendant has successfully refuted any charge of negligence; for, as the trial court has pointed out, the testimony did not come wholly from men employed by the company, who might be under suspicion of bias to a greater or less extent, and it did not consist in mere expression of opinion that the engine was in good order, for the testimony was largely a relation of facts in detail, from which no fair inferences

could be drawn adversely to the company's assertion of proper equipment and condition.

(1) With respect to the operation of an engine, however, the situation is essentially different. Expert testimony as to it often falls within the latter class of cases which present questions of fact for the jury. Expert evidence in rebuttal which, as here, is claimed to show that no locomotive could be so constructed and practically operated as to prevent the escape of burning cinders capable of setting fire to premises at the distance from the right of way involved in the case on trial is justly to be subjected to careful consideration. In point of fact, "no means or device that human ingenuity has as yet been able to produce will wholly prevent the emission or throwing of sparks or cinders from railway locomotives." Menominee v. Milwaukee, 91 Wis. 447, 459, 65 N. W. 176. The escape of fire is inevitable, and is a necessary consequence of a profitable employment of a railway engine. O'Neill v. New York, 115 N. Y. 579, 584, 22 N. E. 217, 5 L. R. A. 591. And see Toledo v. Parks, 163 Ind. 592, 72 N. E. 636. To minimize the distance at which cinders from a proper engine properly handled would start a fire is sometimes for the plaintiff's interest, as here, in order that he may prove defendant's negligence; and sometimes for the defendant's interest in order that it may show that it did not cause the fire. To maximize that distance is sometimes for the plaintiff's interest to prove that defendant was the proximate cause of his damage; and sometimes for the defendant's interest, as here, to prevent an inference of its fault. On both sides of such litigation, experts usually merit by their loyalty as advocates and by their lack of candor as witnesses their current appellation of "associate counsel" or "ancillary counselors." See Steam-Gauge & Lantern Co. v. Ham Mnfg. Co. (C. C.) 28 Fed. 618. Such dialectical exigencies, controversial bias, the course of mechanical progress, and the inherent difficulties in conditions leave such testimony in many of these cases, as in this case, without that certainty which is essential to holding it to be conclusive as a matter of law upon the issues of the particular case.

A reference to a few of the many reported cases on the subject will serve to indicate the propriety of not holding the expert testi-

mony in this case to be final. In Hagan v. Chicago, 86 Mich. 618, 49 N. W. 509, despite testimony that sparks from a proper engine, properly handled, could not have set fire in buildings one hundred sixty feet from the track, the court submitted the railway's negligence to the jury. In Lake Erie v. McFall (Ind. Sup.) 72 N. E. 552, 555 (a case quite similar to the one at bar), the experts testified that although there was a wind blowing south across the tracks, sparks would not be thrown that would set out fire one hundred feet north of the track. In Illinois v. McClelland, 42 Ill. 355, the meadow set on fire was one hundred feet from the track; defendant's experts testified that a properly equipped and managed engine will not throw sparks one hundred feet though the wind might carry them twenty or thirty feet. In Toledo v. Fenstermaker, 163 Ind. 534, 72 N. E. 561, testimony was that sparks would not ignite at a distance of sixty three feet. In Wabash v. Smith, 42 Ill. App. 527, 531, where fire started was sixty five feet away an engineer of eighteen years' experience testified that an engine properly equipped and operated would not throw a spark that distance so as to set fire. Practical engineers have testified that such an engine would not throw sparks that would ignite fifty feet away. And see Louisville v. Black, 54 Ill. App. 82, 85. In Lake Erie v. Helmerick, 29 Ill. App. 270, 274, there was testimony that such an engine so handled would not allow sparks to escape of such a nature as to carry and set fire out a greater distance than twenty five feet. In Burud v. Great Northern Ry. Co., 62 Minn. 243, 245, 64 N. W. 562, 563, it was held that a properly constructed and equipped and operated engine "will not ordinarily emit any sparks or cinders that will remain alive until they reach the earth." In Evansville v. Keith (Ind. App.) 35 N. E. 296, an expert testified that he had never known of a fire started by an engine equipped with the extension front which was properly handled. In Louisville v. Malone, 109 Ala. 509, 20 South. 33, and in Dean v. Chicago, M. & St. P. Ry. Co., 39 Minn. 413, 40 N. W. 270, 12 Am. St. Rep. 659, an expert testified that such an engine so operated could not possibly emit sparks of such a character as to ignite a fire. And see Field v. New York, 32 N. Y. 339; Frace v. New York (Sup.) 22 N. Y. Supp.

958; Johnson v. Chicago, 77 Iowa, 666, 42 N. W. 512; Ross v. Boston, 6 Allen, 87.

In this case, defendant insists, the fact that the fire was started by defendant's engine at a distance of one hundred seven feet from the middle of the track, as it admits, or of one hundred thirty to one hundred fifty feet, as plaintiff's proof tended to show, was as a matter of law entirely consistent with the proper construction and operation of the engine, and with its own expert testimony. The considerations, just reviewed, do not justify attributing such conclusive effect to the actual testimony in the record. The defendant's own testimony is not free from reasonable inference adverse to the defendant even if it fails to show, as plaintiff contends, that a properly equipped and handled engine would not throw fire to where this was set. The engineer who operated the engine, for example, at one place testified that the engine working all right and with proper appliances to prevent the spread of fire, ordinarily would not throw fire a distance of seventy five to one hundred feet, but in answer to the question

> Was there anything in the condition of things, as you remember, out of the ordinary?

he answered

> Why, I don't remember whether the wind was blowing or not; it might have been.

Another witness (Adams) testified that within his own experience, perfectly equipped and handled engines will throw cinders off the right of way as this did. Another witness (Thompson) testified that ordinarily any sparks or cinders that escape from a properly equipped engine were not sufficiently large to carry the fire out of the right of way, but that a strong wind would carry them out of it.

(2) Expert evidence in rebuttal with respect to the operation of the engine to be conclusive must be based on facts as to its actual handling, which are not subject to jury trial; and must be addressed to hypotheses as broad as the circumstances tending to show defendant's negligence. In both respects such testimony in this case failed. The hypotheses to which the rebuttal expert evidence refers must be based, among other things, upon full and accurate descriptions of the actual

physical construction, equipment, and condition of the engine, especially with reference to whether the front end arrangement showed recognized practice and whether the ashpan was of proper design and condition; of the operation of the engine in fact, by both the fireman and engineer, including the nature and condition of the fuel and fire, the stoking actually done, and the actual handling of the dampers, levers, and other mechanical apparatus; of the speed attained; of the work of the engine including the weight of the train, condition of the track, its grade and curve, and any sufficiently strong wind coming from a direction calculated to increase the work of the engine; of any cause, as slipping, which would tend to produce an abnormal draft on the fire; and in appropriate cases of conditions of the environment involving particular danger, as the presence of combustible material on or near the right of way and excessive dryness, especially in connection with a high wind blowing toward such combustible matter.

Exceptional cases may demand exceptional care. It is not always enough to show, as was done here, that the engine was operated so as to produce a maximum of railway efficiency. That a competent engineer handled the engine to the best of his ability or in the usual manner, Solum v. Great Northern Ry. Co., 63 Minn. 233, 65 N. W. 443; unless that be shown to be in the exercise of due care, Woodson v. Milwaukee & St. P. Ry. Co., 21 Minn. 60, is not sufficient. The degree of care which is requisite in all these fire cases is, as in other cases, proportioned to the danger accruing to third persons from failure to exercise reasonable care. 2 Thompson, Negl. §§ 2233, 2235. While there is some conflict on this point in the authorities (Id. p. 795, note 28), this rule accords with the general principle of negligence and is generally accepted. Great Northern Ry. Co. v. Coats, supra; Norfolk v. Fritts, 103 Va. 687, 49 S. E. 971, 68 L. R. A. 864, 106 Am. St. Rep. 911; Fero v. Buffalo, 22 N. Y. 209, 78 Am. Dec. 178; Toledo v. Kingman, 49 Ill. App. 43; Lessor Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 114 Fed. 133, 143, 52 C. C. A. 95; Elliott, Roads, § 1228. In Grand Trunk Ry. Co. v. Richardson, 91 U. S. 454, 470, 23 L. Ed. 356, Strong, J., said: "When the fire occurred which caused the destruction of the plaintiffs' buildings, it was a very dry time and there was a high wind. At such a time, greater vigilance

was demanded than might ordinarily have been required." This is the rule in this state. Nichols v. Chicago, St. P., M. & O. Ry. Co., 36 Minn. 452, 32 N. W. 176; Johnson v. Chicago, M. & St. P. Ry. Co., 31 Minn. 57, 16 N. W. 488; Cantlon v. Eastern Ry. Co. of Minn., 45 Minn. 481, 48 N. W. 22; Hayes v. Chicago, M. & St. P. Ry. Co., 45 Minn. 17, 20, 47 N. W. 260; Solum v. Great Northern Ry. Co., supra; Riley v. Chicago, M. & St. P. Ry. Co., 71 Minn. 425, 74 N. W. 171.

In the same connection the speed of the train is a material consideration. There undoubtedly are cases in which greater speed means harder work and therefore more sparks. Van Nostrand v. Railway Co., 78 Hun, 549, 29 N. Y. Supp. 625; Lake Erie v. Middlecoff, 150 Ill. 27, 35, 37 N. E. 660; De Camp v. Chicago, St. P., M. & O. Ry. Co., 62 Minn. 207, 64 N. W. 392. In regulating the speed of a train the railway company must consider the dryness of the season, the strength and direction of the wind, and the danger in view of the surrounding circumstances which increase the danger from fire thrown out by the engine and a higher rate of speed when taken in connection with circumstances may be negligence. Norfolk v. Fritts, supra; Lake Erie v. McFall (Ind. Sup.) 72 N. E. 552.

The railroad company is not, however, responsible for all damage by fire which its engine may cause. Much of such damage is incident to authorized act and is absque injuria. It is important that the courts should not hamper railroads in the free evolution of transportation and that they should not impose unreasonable restraint thereon by any predetermination as to the weight or speed of trains. It is a question of railroad management, not of law, whether a given engine should be required to draw a maximum load at a necessarily slow rate of speed or to more frequently draw a lighter load at a greater rate of speed. So also the law has fully recognized the right of railroad companies to run trains with regularity and on schedule time. Michigan v. Anderson, 20 Mich. 244; Cronk v. Chicago, 3 S. D. 93, 102, 52 N. W. 420. Judge Mitchell said in Riley v. Chicago, M. & St. P. Ry. Co., 71 Minn. 425, 429, 74 N. W. 171, 172: "Their movements cannot be varied with wind and weather. Engineers and firemen must do whatever is reasonably necessary to be done in order to run their

trains with regularity and in doing this they cannot be expected to have presently in mind the existence or location of every piece of combustible property along the route; but, making due allowance for these considerations, the same rule of duty applies to them as to other people, namely, to exercise a degree of care commensurate with the situation." As was said in Hagan v. Chicago, 86 Mich. 615, 49 N. W. 509, "trains must be run with regularity and with reference to the movements of other trains, in dry weather as well as in wet weather." "The law insists however that with increased speed must be associated a higher degree of care."

In this case, counsel for the defendant, with exceptional skill, showed in detail what the usual manner of handling the engine was; what stoking was done and what the nature and condition of the fuel was; what the engineer did with his levers, and introduced expert testimony to the effect that nothing more could have been done to decrease the emission of cinders and still permit the maintenance of schedule time. The result was a strong showing of proper operation. If this were the only attack upon defendant's rebuttal we should have grave doubts as to its success. Taking that testimony as a whole, however, we are of opinion that it was not addressed to a sufficiently broad hypothesis. The questions asked experts in corroboration of the employees concerning the operation of this engine did not sufficiently contemplate the actual stoking and handling of the engine and its rate of speed with reference to the dryness of the season, the proximity of combustible material near the track, and the character, direction, and effect of the wind. This defect concerned, not so much the propriety of particular questions as the sufficiency of their result. For example, we think the point raised by the fifth assignment of error was not well taken, but the question there asked, which correctly assumed the facts which the testimony tended to prove, is a good illustration of the character of the expert testimony generally, and serves to show the inadequacy of the expert hypothesis. That question as finally put was as follows:

> Q. Assuming that this engine was drawing a passenger train with four cars, and the engine had run about six hundred feet when it had acquired a speed of some thirty or thirty five miles

an hour, and then passed on from that point a distance of something like a mile then running at a speed of thirty or thirty five miles an hour with the reverse lever hooked up next to the center notch, the throttle so placed as to give two-thirds throttle, the grade nearly level but slightly down grade, whether in your judgment that would be the usual method of operating an engine under those circumstances.

The criticism made on this question is that like many other similar inquiries in this record it ignored the especial danger arising from the following exceptional circumstances, namely: In the graphic language of defendant's brief: "It was a dry time; the wind was a gale from south to north across the track (and in the direction of the premises of the insured). It was very windy; the air was filled with dust blowing off the field; it was more than a fierce wind; the air was filled with dust so that it obstructed the view; the speed of the wind was sixty five or seventy miles an hour. It was blowing a gale. Real estate was moving. It was blowing the soil out of the wheat, it was so strong as to carry fire from this straw stack to another one hundred fifty rods away; it was a fearfully strong wind."

It is evident upon the engineer's testimony previously quoted that not knowing whether there was a wind or not he handled the engine in the usual way and with no more care than he ordinarily exercised. That "may not have been such care as common prudence might have dictated and apparently demanded taking into consideration the existing circumstances." Collins, J., in Hayes v. Chicago, M. & St. P. Ry. Co., 45 Minn. 17, 20, 47 N. W. 260. And see Nichols v. Chicago, St. Paul, M. & O. Ry. Co., 36 Minn. 452, 32 N. W. 176 (which, in many but not all respects resembles the present case), and Johnson v. Chicago, M. & St. P. Ry. Co., 31 Minn. 57, 16 N. W. 488.

In view of the necessary granting of a new trial in consequence of these views in this case, it is desirable to express the opinion that the court did not err in sustaining the objection of the defendant to the admission in evidence of the rule of the defendant company furnished to the engineer and fireman of the engine which set the fire in question, for their government at the time of the fire and for the govern-

ment of employees in train service at that time, found in the book of rules of the company in the following words:

> In all cases of doubt or uncertainty the safe course must be taken and no risk assumed.

That book contained private rules regulating the conduct of defendant's own business. It did not tend to fix the standard of duty to others. It was therefore properly excluded. Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 449, 74 N. W. 166, 70 Am. St. Rep. 341. The evidence is not sufficient to bring this case within section 12, p. 476, c. 196, Laws 1895.

The order of the court is reversed, and a new trial granted.